PROVOSTY, J.
[1] Plaintiff sues in damages for the death of his mother, who was killed by a train of the defendant company. Until article 2315 of the Code was amended by Act 71, p. 94, of 1884, and Act 120, p. 178, of 1908, our jurisprudence was well settled to the effect, guoting Hennen Dig. p. 1056, No. 1. “Our law gives no civil action for the homicide of a free human being.” And our jurisprudence is well settled that these statutes, in granting a right of action to the “child” or “children” of the person killed, have reference exclusively to legitimate children, i. e., children born in wedlock, or to children duly legitimated. Lynch v. Knoop, 118 La. 611, 43 South. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, 10 Ann. Cas. 807; Landry v. Am. Creosote Wks., 119 La. 231, 43 South. 1016, 11 L. R. A. (N. S.) 387; Green v. N. O., S. & G. I. Ry. Co., 141 La. 120, 24 South. 717, and authorities there cited.
Plaintiff was never legitimated; and no marriage ever took place between his parents except according to the marriage rites among the Tunica Indian Tribe, to which the mother belonged, followed by cohabitation for a number of years and the begetting of four children. Later the mother lived with another man in open concubinage and while plaintiff’s father was still living, so far as appears from the record. In State v. Chigui, 49 La. Ann. 131, 21 South'. 513, this court quoted the following passage from the American State Papers, Indian Affairs, to wit:
“Tunicas: These people formerly lived on the Bayou Tunica, above Pointe Coupee, on the Mississippi, east side; live now at Avoyelles; do not at present exceed twenty-five men. Their native language is peculiar to themselves, but speak Mobilian; are employed occasionally by the inhabitants as boatmen, etc,; in amity with all other people, and gradually diminishing in numbers.”
The tribe, when it migrated, settled upon a 200-acre tract one mile and a half from Marksville; and it still occupied this tract at the time of the trial of the present case, such as were left of them, five only of whom, in all, were of full blood.
Two witnesses who were present at the marriage ceremony, describing it after more than 40 years, say that the groom and bride appeared before the chief of the tribe, the one accompanied by his father, and the other by her mother, and the chief asked them if they wished to take each other for husband and wife, and they said “Yes,” and that the chief spoke other words, but in the Indian language, which they did not understand.
The syllabus of the case of State v. Chiqui, supra, reads:
“There are no Indians in Louisiana under the protection of the federal government, living on reservations set apart for them by that government, and maintaining tribal relations. The state courts therefore have jurisdiction over them for offenses committed by them.”
This means that the Tunica Tribe has never had any official recognition such as would segregate it from the rest of the popu *1083 lation of the state and entitle its members to the benefit of the tribal laws and regulations, or of laws and regulations different from those governing the state at large.
[2] The question must therefore be as to whether marriage can result in this state from an unofficial ceremony such as that here described, even though followed by long cohabitation as man and wife and the begetting of children.
In view of the positive provisions of our Code, we have to hold not. Article 88 reads:
“Such marriages only are recognized by law as are contracted and solemnized according to the rules which it prescribes.”
The law prescribing these forms and solemnities are found in the Code and are familiar. Suffice it to say of them here that they are other than the Indian ceremony in question in this case. Therefore plaintiff’s' parents were never married, and he is without a right- of action.
Judgment affirmed.