On February 9, 1943, at about 4 o'clock p.m., a Plymouth automobile owned and operated by Alvin J. Danner was being driven on Frenchman street over the lakeside intersection of North Claiborne Avenue. After the car had preempted the crossing (and its front end had reached a point at or near the lakeside curbing of the intersection) it was struck a terrific blow on its right side (near its rear) by the front end of a large Buick ambulance, owned by Joseph Laughlin, Inc., and operated by its employee, Manuel Pelleteri, which had driven into the intersection from the lakeside roadway of North Claiborne Avenue from the direction of Elysian Fields Avenue. As a result of the impact, the Plymouth car was turned completely around and its rear end ran over the uptown lakeside curbing at the corner of Frenchman street and North Claiborne Avenue, where it collided with an iron post, which supported a gallery over a beer parlor situated on the corner, causing the post to fall on and injure one Henry J. Scoggins, Jr., who was standing at or near the entrance of the beer parlor. The injuries received by Scoggins were so severe that he died therefrom three days later.
Claiming that the death of Scoggins resulted from the negligence of the operator of the Buick ambulance, Mrs. Carmen Navarrette, divorced wife by first marriage of Ovide J. Cosse and allegedly the widow by second marriage of the deceased, appearing individually and on behalf of her minor daughter, Carmen Helena Scoggins, brought suit in the Civil District Court against Pelleteri, his employer, Joseph Laughlin, Inc. (now in liquidation), and Employers Liability Assurance Corporation, Ltd., the latter's insurance carrier, for damages in the sum of $25,000 on her own account and for a like sum in her favor on behalf of her minor child.
The defendants, after filing certain exceptions to plaintiffs petition, answered and denied generally the averments thereof respecting the alleged fault of Pelleteri and also in regard to plaintiff's claim that she and her child are the legal survivors of the deceased. While the case was thus at issue in the District Court, a Mrs. Estelle Richards, claiming to be the surviving spouse of the deceased, intervened in the proceeding and alleged that she was interested in the outcome of the suit and that she desired to become a party thereto by joining with the defendants in resisting the demands of the plaintiff. She further averred that she was married to the decedent in the city of New Orleans on January 23, 1923; that the marital domicile was maintained in said city and that she and the deceased were never legally divorced; that she was informed, after the death of her husband, that he had secured a divorce from her in Hancock County, State of Mississippi, during the month of November, 1940; that, if such information be true, then the judgment of divorce rendered in the State of Mississippi is invalid and unenforceable for the reason that neither she nor her deceased husband were ever domiciled within that state and that, therefore, any subsequent marriage between her husband and plaintiff is void and of no effect.
Intervenor accordingly prayed that there be judgment in her favor, against the plaintiff, individually and as natural tutrix of her minor child, decreeing that plaintiff was not legally married to the decedent and further decreeing that she is his lawful surviving spouse.
In addition to this intervention, Mrs. Estelle Richards filed a separate suit against the defendants in the Civil District Court in which she asserted charges similar to those made by plaintiff, concerning the negligence of Pelleteri, and prayed for judgment in damages in the sum of $25,000 for the wrongful killing of her alleged husband. The defendants appeared in this suit and denied generally the allegations contained in Mrs. Richards' petition.
Shortly after Mrs. Richards had filed her intervention in the suit brought by plaintiff, the latter interposed an exception of no right or cause of action to her demand. This exception was overruled. Thereafter, plaintiff filed an answer to the intervention in which she denied the intervenor's claims and set forth that she was legally married to the decedent on November 9, 1940. In *Page 316 
the alternative, plaintiff prayed that, if the court should find that the Mississippi divorce in favor of the decedent is null and void, she and her minor child are, nevertheless, entitled to recover damages for decedent's death, inasmuch as she had married him in good faith and that said marriage produced civil effects.
As soon as the case was thus at issue on the questions presented by the various pleadings of the parties, Mrs. Richards, the intervenor in one case and plaintiff in the other, filed a motion to consolidate her suit for damages with plaintiff's action. The motion was granted on March 9, 1944, the court ordering that the causes be tried together and decided by a single judgment. Thereafter, a trial was had in the consolidated cases which was followed by a judgment wherein the intervention of Mrs. Richards was dismissed and Mrs. Navarrette and her child were decreed to be the legal survivors of the deceased and entitled as such to recover for his wrongful death. Mrs. Narvarrette was accordingly awarded damages in the sum of $7500, individually as widow, and $7500 for the use and benefit of her child, or a total of $15,000. However, the defendant insurance company was held liable in solido with the other defendants for not more than $10,000 which is the limit of its liability under its policy. On the same day, but by separate judgment, a decree was entered in the suit brought by Mrs. Richards against the defendants dismissing her demand.
All of the defendants have appealed from the judgment in which they are cast and Mrs. Navarrette has answered the appeal seeking an increase of the damages awarded by the lower court. Mrs. Richards has also appealed from the judgment dismissing her intervention and from the judgment dismissing her action against defendants for damages. The appeal of defendants from the judgment in favor of Mrs. Navarrette has been docketed here under No. 18,204. The transcript of that appeal contains all the evidence which was adduced in the consolidated causes and also the petition of appeal of Mrs. Richards. The latter has docketed the appeal from the judgment dismissing her damage suit against the defendants under No. 18,218. That transcript contains only the pleadings, which were filed in that suit and the judgment of the District Court.
[1] Defendants have moved to dismiss the appeal in docket No. 18,218, which is the damage suit of Mrs. Richards, on the ground that she has not appealed from that judgment but only from the judgment contained in the transcript of docket No. 18,204 wherein her intervention against Mrs. Navarrette was dismissed.
We find no merit in defendants' motion. As heretofore pointed out, the suit of Mrs. Navarrette, in which Mrs. Richards intervened, was consolidated for all purposes with the suit by Mrs. Richards against the defendants for damages and, in the order of consolidation, the court specifically declared that the causes would be decided by one single judgment. In the petition for appeal taken by Mrs. Richards, she has captioned not only the suit for damages by Mrs. Navarrette, which contained her intervention, but also her suit for damages against the defendants. She further set forth in her petition that she is the intervenor in one case and the plaintiff in the other case; that a judgment was rendered in the matter on July 7, 1944 and signed on July 13, 1944 in favor of Mrs. Navarrette and that she is aggrieved by the judgment. And she prayed for an order of appeal and service of citation upon the defendants as well as Mrs. Navarrette.
The judgment which was entered in Mrs. Richards' damage suit, although contained on a separate piece of paper and filed in the record of that case, was rendered on the same day, July 7th, and signed on the same day, July 13th, as the judgment in the suit of Mrs. Navarrette. Since the court had ordered that there would be one judgment in the consolidated cases, it was evidently through inadvertence that two separate judgments were rendered and signed. But the error, committed in the court below, cannot be regarded as serious or one by which defendants may profit forasmuch as the judgments in the cases can and should be considered, for all practical purposes, as one single judgment which was rendered at one and the same time in accordance with the previous order of the court. A reading of Mrs. Richards' petition of appeal has been sufficient to convince us that she intended to appeal and that she believed that she was appealing from the decree dismissing her damage suit as well as from the order denying her intervention. The only reason why the judgment dismissing her damage suit is not specifically referred to in her prayer for appeal is because she was under the impression that the judgment in Mrs. Navarrette's *Page 317 
case included her damage suit. If she was mislead in this respect, it was due to the error of the District Court in not complying with its previous order to decide all issues in the consolidated causes by one single judgment. To hold that Mrs. Richards had failed to appeal in the circumstances here presented would be to base the denial of her right upon a most tenuous technicality. We think that a sensible view of the situation requires us to conclude that the two judgments, which were rendered at the same time after the causes were consolidated, are to be treated and considered as one single judgment disposing of all the issues presented in the cases and that the appeal taken by Mrs. Richards brings before us her right to recover damages against defendants in the event the claims as set forth in her intervention are decreed to be well founded.
Coming now to the merits of the matter, we find that there are three main questions before us for decision.
(1) Whether Pelleteri, the driver of the Laughlin ambulance, was guilty of fault which was either the direct source of the fatal accident or had causal connection therewith; (2) Whether defendants were entitled to attack collaterally a judgment of the Civil District Court wherein plaintiff, Mrs. Navarrette, obtained a decree of final divorce from her first husband, Ovide J. Cosse; and (3) Whether the Mississippi divorce decree obtained by the deceased from his first wife is invalid and unenforceable in Louisiana because the Mississippi court was without jurisdiction ratione materiae. We undertake a discussion of these questions in their respective order.
[2] Although counsel for the defendants claim that Pelleteri was without fault in the premises, a reading of the record has been sufficient to convince us that this contention is wholly without substance. The accident occurred on a clear day in the lakeside roadway of the intersection of Frenchman street and North Claiborne Avenue. Prior thereto, Danner had been driving his Plymouth car on Frenchman street in the direction of Lake Ponchartrain. When he reached the riverside intersection of North Claiborne avenue, a wide, double paved avenue which crosses Frenchman street at right angles, he brought his car to a complete stop in obedience to the traffic stop sign situated at the corner. Upon observing that the riverside roadway was clear of traffic, he proceeded forward over the intersection and continued over the neutral ground of the avenue at a slow rate of speed, variously estimated at between five and ten miles per hour. While thus traversing, he looked into the lakeside roadway of North Claiborne Avenue for oncoming traffic, which was permitted to travel one way only, — i. e., from the direction of Elysian Fields Avenue towards Canal street, and saw the large ambulance of Laughlin, Inc., approaching the intersection at a distance of at least 200 feet. At the time he observed this ambulance, Danner had progressed to a point practically of the entrance of the lakeside roadway of the avenue and, believing that he had ample time to negotiate the intersection in front of the 'ambulance, he proceeded to cross it. However, after his car had preempted the crossing and the front portion thereof had reached the Lakeside curbing of the roadway, it was struck a terrific blow on its right rear side by the front end of the ambulance, which had been driven up Claiborne Avenue at a speed variously estimated at between thirty and fifty miles per hour. The blow received by the Plymouth car was of such violence that the car was hurled onto the sidewalk where it struck an iron post which supported an upper gallery attached to the building on the corner, knocking down said post which fell upon Scoggins and caused his death. Pelleteri, the driver of the ambulance, plainly concedes his negligence in the statement given by him in the court below — for he admits that he did not see the Danner car when it was travelling on the neutral ground on its approach to the crossing and that he did not become apprised of the fact that it had entered the intersection until his helper, one Mooney, who was riding on the front seat of the ambulance, yelled for him to "look out" at a time when the ambulance was only 35 feet from the crossing. Upon being thus advised of the presence of the Plymouth car, Pelleteri says that he immediately applied his brakes and that the ambulance skidded some thirty feet when its front end made contact with the rear right side of the Plymouth car. He would have us believe that the ambulance was travelling at a speed of approximately twenty-five miles per hour upon its approach to the intersection but the other evidence and the physical facts of the case clearly demonstrate to our satisfaction that the speed of *Page 318 
the ambulance was highly reckless and excessive.
Counsel for defendants submit that Pelleteri's admitted failure to observe the Plymouth car before it reached the intersection cannot be regarded as having causal connection with the ensuing accident and they argue that, if he had seen it, he would have been entitled to assume that its driver would yield the right of way to the ambulance. This proposition, we think, is in plain discord with the physical facts of the case and overlooks the circumstances presented at the scene of the accident. Furthermore, even if it be conceded that Danner was guilty of negligence (which we doubt), defendants are nonetheless responsible, — as negligence on the part of Danner does not excuse the fault of Pelleteri, which unquestionably had direct and causal connection with the catastrophe. Hence, we hold that defendants are liable to the legal survivors of Scoggins for his wrongful death under Article 2315 of the Civil Code.
[3, 4] The second question presented for determination is whether defendants should have been permitted to make a collateral attack upon a judgment rendered by the Civil District Court granting to Mrs. Navarrette an absolute divorce from her first husband, Ovide J. Cosse, on the ground that they had lived separately and apart for a period of two years. Mrs. Navarrette offered the judgment in evidence for the purpose of showing that she was fully able to contract her marriage with the deceased and defendants then attempted to offer testimony tending to show that the decree was obtained through misrepresentation, inasmuch as the parties to the suit had not lived separately and apart for the period required by our laws. Counsel for Mrs. Navarrette objected to this method of attack and the judge sustained the objection.
The judge was correct in his ruling. The decree relied upon by Mrs. Navarrette is wholly valid on its face. It is well settled that a judgment rendered by a court of competent jurisdiction imparts absolute verity and has the force of the thing adjudged until set aside in a direct action of nullity. It cannot be attacked collaterally. See Succession of Quin, 30 La. Ann. 947; Kent v. Brown, 38 La. Ann. 802; Starns v. Hadnot, 42 La. Ann. 366, 7 So. 672; Equitable Securities Co. v. Block, 51 La. Ann. 478, 25 So. 271 and Weil v. Schwartz, 51 La. Ann. 1547, 26 So. 475. In fact, the defendants, in a supplemental brief but recently filed, have conceded that their collateral attack cannot be sanctioned.
[5, 6] Disposal of the foregoing points bring us to the most vigorously contested question in the case, viz. — whether the judgment of divorce secured by Scoggins in Mississippi is invalid because the court rendering it was without jurisdiction ratione materiae. In approaching the discussion of this question, we think it apt to observe that article 2315 of the Civil Code, which is our death by wrongful act statute, grants a cause and right of action for the negligent death of a person in favor of the children and surviving spouse of the deceased and further provides that this right of action shall accrue to the major children only in case there is no surviving spouse or minor child or children. Thus, in the present case, if Mrs. Navarrette is the legal surviving spouse of the deceased and her minor child is his legal child, there can be no doubt as to their right of recovery. We say "legal spouse and child" because the Supreme Court has already determined that a putative wife is not the widow or wife of a person within the purview of Article 2315 (see Vaughan v. Dalton-Lard Lumber Co.,119 La. 61, 43 So. 926) and that the words "child or children", as used in the article, refer exclusively to legitimate children or those who have been duly legitimate. See Green v. New Orleans S. G. I. R. Co., 141 La. 120, 74 So. 717 and Youchican v. Texas P. Ry. Co., 147 La. 1080, 86 So. 551.
[7] Mrs. Navarrette alleges in her petition that she is the widow, by second marriage, of the deceased and that her minor child is the issue of that marriage. Defendants deny this allegation and, as a consequence, the burden of proof was upon her to establish her marriage which she has done by offering in evidence a certificate of a Justice of the Peace of Hancock County, Mississippi showing that she and the deceased contracted marriage on November 9th 1940. This proof would have been sufficient to make out a prima facie case but for the intervention of Mrs. Richards. In that intervention, she asserts that the marriage is invalid because Scoggins, one of the contracting parties, was unable to marry plaintiff as he was already married to intervenor; that they were never legally divorced and that, although she is informed that he did obtain a decree of divorce in Mississippi, the judgment is void and of no *Page 319 
effect because the court was without jurisdiction as neither she nor the deceased were domiciled in that state.
Mrs. Navarrette filed an exception of no right or cause of action to this intervention which is based on two theories:
(1) That the judgment of divorce obtained in Mississippi is valid on its face and shows that the court had jurisdiction of the subject matter and that, therefore, the courts of Louisiana are without right or authority to entertain an attack thereon (a) by reason of Articles 608 and 610 of the Code of Practice and McKisson v. McKisson, 179 La. 593, 154 So. 618, and (b) by virtue of the full faith and credit clause of the United States Constitution, Article IV, Section 1 and Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, and
(2) That, under Articles 389 and 391 of the Code of Practice, an intervenor is not permitted to raise a new issue but must take the case as he finds it.
[8] We do not find any force whatever in the second proposition advanced by Mrs. Navarrette. Under Article 2315 of the Code, the legal survivors of the deceased are the only persons entitled to maintain an action for death by wrongful act. Therefore, Mrs. Richards, who claims that she is the surviving spouse of the decedent, was properly permitted to intervene and assert her rights. The articles of the Code of Practice relied on by Mrs. Navarrette in no way interfere with the maintenance of the intervention. The authorities cited by her in support of her contention are to the effect that the intervenor must take the case as he finds it and that he can neither retard the principal suit, change the issue between the parties nor raise new ones. Mrs. Richards is not attempting to do any one of these things; she merely intervenes and opposes plaintiff's right to recover for the death of the decedent on the ground that she, and not the plaintiff, is his surviving spouse.
It is also plain that point (a) of the first theory of Mrs. Navarrette's exception is without merit. While the Civil District Court is without jurisdiction to declare that a decree of divorce rendered by any other court is void because an action of nullity must be brought before tile court which renders the judgment under the articles of the Code of Practice, the intervention of Mrs. Richards cannot be regarded as a direct action to annul a judgment. On the contrary, it is a proceeding brought for the purpose of having intervenor recognized as the lawful widow of Scoggins, wherein it is asserted that Scoggins has never been divorced from her and that, if the plaintiff depends on the Mississippi decree as constituting a dissolution of her marriage to decedent, the decree is invalid here because the court was without jurisdiction of the subject matter.
In McKisson v. McKisson, supra, the plaintiff brought a direct action to annul a judgment of divorce rendered by a Texas court and, coupled with this demand, a suit for a separation of property and a dissolution of the marital community. The court found that, while the Civil District Court was without jurisdiction to annul the Texas decree, in view of Articles 608, 609 and 616 of the Code of Practice, and that therefore plaintiff's action for that relief could not be maintained, she was nevertheless entitled to pursue her demand for a separation of property and dissolution of the marital community and assert that the Texas judgment was unenforceable and invalid in Louisiana, since she had alleged that the Texas court which had rendered the divorce decree was without jurisdiction ratione materiae.
In the case at bar, the intervenor does not seek to have the court declare that the Mississippi decree is not binding in Mississippi or in any other state but only that that decree will not be recognized and enforced in Louisiana because the Mississippi court was without jurisdiction ratione materiae. It is firmly established ill the jurisprudence of this state that such an attack is proper. See McKisson v. McKisson, supra; Voorhies v. Voorhies, 184 La. 406, 166 So. 121; State v. Wenzel, 185 La. 808, 171 So. 38 and State v. Dickinson,191 La. 266, 185 So. 20. In all of the foregoing cases, it was recognized by our Supreme Court that decrees of divorce rendered by foreign states were open to attack in this state where the validity of those decrees was questioned on the ground that the courts rendering them were without jurisdiction ratione materiae and that evidence could be adduced to show the lack of jurisdiction in the foreign courts, despite the fact that the decrees were valid on their face and showed that the courts had assumed jurisdiction of the subject matter.
Counsel for Mrs. Navarrette recognizes, as he must, the effect of the pronouncements *Page 320 
in the above cited cases. However, she maintains that the recent decision in Williams v. North Carolina, supra, has altered the prior jurisprudence of the Supreme Court of the United States to such an extent that the court is presently of the view that the mandate of tile full faith and credit clause of the Constitution requires absolute enforcement without limitation and that the courts of one state may not now refuse full faith and credit to a judgment of divorce rendered in another state, even though the basis of the attack on the judgment of the foreign state is that the court was without jurisdiction ratione materiae. In this contention, we think that counsel is in error.
In Williams v. North Carolina, supra, the question for decision was whether the State of North Carolina was bound, under the United States Constitution, to recognize and give full effect to divorce decrees rendered by the courts of Nevada wherein the petitioners were granted judgments of absolute divorce against their respective spouses domiciled in North Carolina. The petitioners had been prosecuted for bigamy in North Carolina on two theories, (1) that, under the established jurisprudence of the Supreme Court of the United States (Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann. Cas. 1), the State of North Carolina was not required to recognize the decrees of divorce rendered in their favor by the Nevada courts under the full faith and credit clause, and (2) that said decrees were further invalid because petitioners went to Nevada solely for the purpose of taking advantage of tile laws of that state to obtain a divorce through fraud and not for the purpose of establishing bona fide domiciles there. The case was submitted to the jury on these two theories and the jury returned a general verdict of guilty. The Supreme Court of North Carolina affirmed the judgment and sustained the verdict on both grounds. See State v. Williams, 220 N.C. 445,17 S.E.2d 769. When the case reached the Supreme Court of the United States, that court found, among other things, that, since the criminal charges had been submitted on both theories to the jury which had returned a general verdict of guilty, it was unable to discover whether the verdict was based on the theory that North Carolina had the right to refuse recognition of the Nevada decrees for reasons of public policy or on the ground that the Nevada court was without jurisdiction, or on both theories. In these circumstances, the court concluded that a reversal of the convictions would be required if their validity depended on either one of the two theories upon which the prosecutions were based. Therefore, it considered only the question as to whether the State of North Carolina had the right to refuse full faith and credit to the Nevada decrees on the ground that the divorce laws of Nevada were inimical to the public policy of North Carolina. And the court assumed, for purposes of its decision, that the petitioners had acquired bona fide domiciles in Nevada and that the Nevada court had jurisdiction ratione materiae. The convictions were reversed solely on the ground that Haddock v. Haddock could no longer be sustained as the law of the land and that North Carolina was required to extend full faith and credit to the Nevada divorce decrees even though the grounds upon which those decrees were predicated were contrary to the public policy of North Carolina. That the court in the Williams case did not overrule its previous pronouncements in Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366, and other cases, wherein it has been established that the mandate of the full faith and credit clause does require the recognition and acceptance by one state of a divorce decree rendered in another state, if the latter state was without jurisdiction ratione materiae, and that the state in which the judgment is questioned may investigate the facts and determine independently of the holding in the foreign state whether the court of the latter had jurisdiction (Compare Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518), is clearly and succinctly expressed in the majority opinion. In summing up the question before it for decision the court specifically pointed out that [317 U.S. 287, 63 S.Ct. 215]:
"In the first place, we repeat that in this case we must assume that petitioners had a bona fide domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees *Page 321 
because, contrary to the findings of the Nevada court, North Carolina finds that no bona fide domicil was acquired in Nevada."
[9, 10] Thus we see that the decision in Williams v. North Carolina is of limited scope and that it does not hold that the demand of the full faith and credit clause is such as to preclude the state, in which the validity of the foreign divorce is questioned, from determining whether the foreign court had jurisdiction ratione materiae even though the decree, on its face, makes out a case of jurisdiction. It accordingly follows that, if it has been established by convincing proof that Scoggins did not reside in the state of Mississippi for the length of time required by the laws of that state necessary to establish a domicile therein, the decree of divorce rendered by the Mississippi court is not entitled to full faith and credit in the state of Louisiana and will not be recognized here.
Before we undertake to examine the evidence submitted, which counsel for defendants and intervenor say shows an utter lack of jurisdiction of the court in Mississippi over the domicile of either Scoggins or Mrs. Richards, we shall dispose of two preliminary questions which have been argued and briefed to this court.
[11, 12] Counsel for Mrs. Navarrette asserts that, since neither the intervenor nor the defendants introduced evidence exhibiting the law of Mississippi on divorce, it is impossible for us to say that the court of that state did not have jurisdiction of the divorce proceedings and he directs our attention to the well-settled jurisprudence that we cannot take judicial cognizance of the laws of another state, even though our Supreme Court has directly passed thereon as in the cases of State v. Wenzel and State v. Dickinson, supra.
We agree that we cannot take judicial cognizance of Mississippi law. Hence, we would be without right, in the absence of evidence of such law, to declare that the courts of that state did not have jurisdiction of the divorce proceeding. But there is evidence in the record which was offered to establish the Mississippi law. True, this proof was not adduced by either the intervenor or defendants; it was submitted by plaintiff's own witness. During the first day of the trial below, plaintiff tendered as a witness Mrs. E.H. Conner, a practicing attorney of Hancock County, Mississippi, who handled the divorce action on behalf of the deceased. This witness was asked by counsel for plaintiff to state the law of Mississippi respecting divorces and she declared that it provided that a person residing within that state for one year prior to the filing of the suit may institute an action for a divorce even though the party against whom the proceeding is brought does not reside within the state. Since this is the proven law of Mississippi for purposes of this decision, we must assume that residence in that state for one year is there regarded as the equivalent to the establishment of a domicile which is essential to jurisdiction in actions for divorce. See Williams v. North Carolina, supra.
[13] We are also compelled to give notice to the fact that, since the filing of the intervention by Mrs. Richards, she has apparently had a change of mind respecting her desire to have the Mississippi judgment rendered ineffective. The reason for this change is not made evident by the record but it is, nevertheless, very apparent. However, she has at no time abandoned her demand and, as she has prosecuted an appeal from the adverse judgment below, we are required to investigate all of the evidence submitted in the case in order to determine the validity of her claims. The record shows that this noticeable change of attitude occurred between the time Mrs. Richards asserted her demands and the date of the hearing. Her testimony at the trial is substantially different from a statement which she had previously given the defendants at the time she filed her claim for damages with them. And, while her counsel joined in various offers of documents made by defendants for the purpose of showing that Scoggins did not, in fact, reside in Mississippi, it is wholly apparent that she has left the burden of proving her claim to the defendants. Because of this marked change of feeling on the part of Mrs. Richards, we have been confronted with the problem of determining whether the defendants have the right to champion her cause by submitting evidence in aid of it. The defendants say that they have this right as it obviously affects the extent of their liability in the premises. In other words, if recovery is permitted to Mrs. Navarrette and her child, the damages awarded to them would be far greater in amount than the sum to which Mrs. Richards would be entitled in the event the evidence establishes her to be the legal survivor of the deceased. There can be little *Page 322 
doubt, therefore, that the defendants have considerable monetary interest in defeating Mrs. Navarrette's claims.
However, we do not here decide whether a defendant, who is sued for death by wrongful act, can ordinarily inquire into the validity of a divorce decree rendered by a foreign court, by virtue of which the deceased had undertaken to contract a subsequent marriage. In such a case, it might be plausibly argued that the defendant was interested in only two questions, (1) his liability and (2) that the claimant was the legal survivor entitled to damages under Article 2315 of the Code. On this second question, the duty would rest on plaintiff to show that she was the surviving spouse and, under ordinary conditions, proof of the marriage to the decedent would suffice. If, upon the submission of such proof, the defendant claimed that the marriage was null because either one or the other of the contracting parties was previously married and not divorced, the production of a judgment of a court of a foreign state (valid on its face) dissolving the first marriage might be held to preclude the defendant from challenging collaterally its validity as it could be said that his interest was too remote since he would probably be fully protected from further liability if he was required to pay damages on the faith of such a judgment. But, as we have said, that is not the situation before us. Here a person who declares that she is the legal survivor of the deceased has intervened in the proceeding and is pursuing the prosecution of her claims. In these circumstances, it seems plain that the defendants have the right to submit evidence (which, by the way, was all admitted without objection by Mrs. Navarrette) in aid of the party whom they contend and believe to be the legal survivor of the deceased. And recognition of this right seems all the more imperative where defendants have a substantial monetary interest in defeating plaintiff's claims.
With these observations, we approach a discussion of the evidence submitted by the parties on the question of the validity of the Mississippi divorce. Mrs. Navarrette has introduced in evidence a duly certified copy of the divorce proceedings in Hancock County, Mississippi, attested by the Clerk and Chancellor, in accordance with the Acts of Congress. This document contains the bill of complaint filed by Scoggins against his wife, Estelle Richards, an affidavit showing citation by publication, the docket entries in the case and the judgment of the court. The allegations of the petition respecting the jurisdiction of the court are as follows: "That complainant has resided within the state of Mississippi and in Hancock County, therein for a period of more than one year prior to the filing of this suit; and that he is at this time a resident of Hancock County, Mississippi."
It is further alleged that the respondent is a non-resident of Mississippi; that she resides in the State of Louisiana and that her post office address and domicile is at No. 603 Harmony Street, New Orleans, Louisiana. It is then set forth: "That complainant and respondent were married in New Orleans, Louisiana, on January 23, 1923; that since said time they have resided a part of the time in the State of Louisiana, and a part of the time in the State of Mississippi, up to the 19th day of June 1940, when said parties separated because of the facts hereinafter alleged, and have not lived together since said date."
This petition was filed in the Chancery Court of Hancock County, Mississippi on September 25th 1940, so Scoggins must have resided in Mississippi for at least one year prior to the filing of this suit, or from September 25th 1939, in order for the court to have acquired jurisdiction. Substituted service was duly made in accord with Mississippi law, upon Mrs. Richards by publication of the summons in the "Sea Coast Echo" a newspaper of Hancock County. Judgment by default was rendered on November 7th 1940. This judgment recites: "This cause coming on for final hearing on bill of complaint, publication of process for respondent, as by law required proof of publication, and oral testimony; and same having been heard and duly considered by the court, it appearing to the satisfaction of the court, that the allegations of the bill of complaint are true and correct, having been fully established by such oral proof; and that the divorce prayed for should be granted;"
Then follows the decree dissolving the bonds of matrimony between Scoggins and Mrs. Richards. On November 9, 1940, two days after this judgment was rendered, Scoggins was married to Mrs. Navarrette by a Justice of the Peace in Hancock County, Mississippi.
It is probable that the proceedings in Mississippi are sufficient to establish the jurisdiction of the court although it is to be *Page 323 
observed that the allegations of the petition are somewhat inconsistent. Comparing the initial averments, that complainant has resided in Hancock County for more than a year, with the subsequent recital, that, since the date of the marriage of complainant and respondent "they have resided a part of the time in Louisiana, and a part of the time in Mississippi", up to June 19, 1940 when the parties separated, it will be at once noticed that the latter allegation is most confusing, — forasmuch as the reader is not informed whether the parties separated while they were living in Mississippi or whether they parted while domiciled in Louisiana. If the pleader meant that the parties were residing in Louisiana on June 19, 1940 when the separation took place, then it is manifest that this specific allegation is contradictory of the general averment that Scoggins was living in Mississippi for more than one year prior to the commencement of the suit. However, we feel that, in view of the other recitals contained in the petition and the judgment of the court, we are probably required to assume that evidence was presented to the Chancellor at the uncontested hearing, which tended to establish the court's jurisdiction. But the significance of the allegation that the parties separated in June 1940 will not be overlooked and will be again referred to in our discussion of the evidence submitted at the trial of this case.
The evidence produced by the defendants and intervenor to sustain their attack on the Mississippi divorce reveals the following:
That Scoggins and intervenor were married on January 23, 1923 and that one child, namely, Vela Dolores Scoggins, wife of Jack Favro, was born of said marriage; that the parties lived together in New Orleans from the date of their marriage until sometime either in 1939 or 1940 at which time they separated; that, after the separation, intervenor remained at the marital domicile No. 603 Harmony Street and that Scoggins went to live either with his mother or over to Mississippi. It was further established that, prior to his separation from his first wife, Scoggins was working for Cobb and Whitehead Motor Company as a salesman and that, after the separation, he continued in the employ of that concern in New Orleans until November 9th 1940, the date on which he married Mrs. Navarrette in Hancock County, Mississippi. This fact is shown, not only by evidence of employees of Cobb and Whitehead Company, but also by ledger sheets of that concern recording the daily sales made by its salesmen, which reveal that Scoggins worked fairly steadily from March 18, 1939 through January 20, 1940 and that he again worked steadily from May 4, 1940 up to and including November 9th of the same year. Evidence was also introduced exhibiting the fact that Scoggins registered as a voter in New Orleans on August 8, 1939. In this application for registry, he stated that he was born in Louisiana; that he had resided in the Parish of Orleans since birth; that he had resided in the 11th ward at No. 603 Harmony Street since December 1st 1938 and that his occupation was "used car salesman". Another registration application was offered in evidence which shows that, on September 24, 1941, after his marriage to Mrs. Navarrette, Scoggins again applied for registration and stated that he was born in Louisiana; that he resided in the state and in Orleans Parish since birth; that he was residing at No. 326 North Robertson Street in the 4th ward since May 1941 and that his occupation was "salesman".
Defendants and intervenor further offered in evidence a certified copy of a chattel mortgage on a Lincoln Zephyr Sedan, owned by Scoggins, in favor of one Charles A. Luckow, dated April 12th 1940, in which Scoggins declared to the Notary Public, who passed the Act, that he was a resident of New Orleans, Louisiana, and that the mortgaged automobile was to be located and kept at No. 603 Harmony Street, New Orleans. Defendants also produced one Battistella, who testified that he was in charge of the used car lot of Cobb and Whitehead Company while Scoggins worked there as a salesman and that, as far as he knew, the deceased was living in New Orleans on Harmony Street during the time he was working for the company.
The intervenor testified, in substance, that she and Scoggins lived in the city of New Orleans from the date of their marriage in 1923 until sometime in the year 1939, when they separated. She was unwilling to fix the date or month of the separation but insisted that she knew that it occurred during the year 1939. She further stated that, at the time of the separation, the parties were living at No. 603 Harmony Street and that she remained at that address until May 3, 1941 when her daughter was married. She further said that at no *Page 324 
time during her marriage had she ever resided in the State of Mississippi; that she was never served with any papers concerning the Mississippi divorce and that it was sometime after Scoggins married Mrs. Navarrette when she was informed that he had obtained the Mississippi divorce. On cross-examination by counsel for the defendants, Mrs. Richards was shown a signed statement which she had given to the defendants shortly after she made demand upon them for damages for the death of her husband. In this statement, she declared that she and her husband separated in August of 1940 as a result of a mutual understanding to live apart "but I had no intentions of divorcing him as I am a catholic". When confronted with this statement, Mrs. Richards, while admitting her signature, declared that she had not read its contents and that the assertions contained therein were incorrect because she was sick at the time the statement was given. This denial plainly exhibits intervenor's change of attitude with respect to her attack on the Mississippi divorce. Furthermore, her evidence, while not entirely unfavorable to her claim, manifests, by its indefiniteness respecting the date on which the separation occurred, an intention on her part not to make any statement which might be injurious to Mrs. Navarrette's case. In such circumstances, we think that it is only reasonable to believe that the statement she gave to the defendants in which she fixes the date of her separation from Scoggins as August 1940 (a time in close agreement with the allegations contained in the petition for divorce filed in Mississippi), is more credible than her vague assertions on the witness stand.
Intervenor also produced her daughter, Mrs. Favro, to give evidence at the trial below. Her testimony is practically the same as the evidence given by the mother. She said that her father and mother separated sometime in 1939 and that her mother had never received notice of the divorce proceeding in Mississippi.
In order to rebut the evidence submitted by intervenor and the defendants, Mrs. Navarrette produced four witnesses in addition to herself, namely Mrs. E.H. Conner, Mrs. Esther Gerdes, James Gerdes and Clovis Dupont. Mrs. Navarrette testified that she first met Scoggins about five or six months before his divorce; that he was an automobile salesman and that she was introduced to him by friends to whom he had sold an automobile; that, during the time of their courtship, they would meet each other in New Orleans and that she went to Bay St. Louis, where he was allegedly residing, on several occasions for weekend visits to him in company with his mother and other members of his family; that they were married two days after his divorce in Mississippi; that after the marriage, they came back to New Orleans for a day or so and that they then went to Miami, Florida where he engaged in the business of racing dogs. She further stated that, at the time she visited him in company with his family prior to his divorce, he was living at "Clermont Harbor Inn", Bay St. Louis, Mississippi.
Mrs. Connor, the lawyer who represented Scoggins in the Mississippi divorce proceeding, in addition to stating the requirements of the law of Mississippi in divorce matters, testified that the allegations of the petition for divorce respecting the residence of Scoggins were not contradictory and that the detailed averments about the parties living part of the time in Mississippi and part of the time in Louisiana until they separated in June 1940 were "merely a recital of the facts which had existed during the entire period of the marriage, since 1923". She further stated that, before she will accept employment in a divorce action, she always makes an independent investigation to ascertain the jurisdictional facts unless she has known the parties involved for years and years; that, in the Scoggins case, she had known the deceased only casually; that, when he was referred to her, she made an investigation to ascertain the domiciliary status; that she had learned that his married life had been rather hectic and that he had gone wherever he could best make his living; that he had been in Mississippi a part of the time and in Louisiana a part of the time; that he had finally settled back in Mississippi but that his wife did not desire to live in Mississippi and remained in Louisiana, although the status of his residence was in Mississippi.
It is apparent, from this evidence, that the allegation in the petition for divorce that the parties resided in Louisiana part of the time and in Mississippi part of the time was intended to convey the idea that Scoggins had already acquired a residence in Mississippi, prior to June 1940 when the separation allegedly occurred, despite the fact that the wife had refused to leave *Page 325 
Louisiana and follow him to Mississippi. At best, Mrs. Conner's explanation is of the weakest sort, since other testimony in the case not only makes it certain that Mrs. Richards at no time lived with Scoggins in the State of Mississippi but that Scoggins himself did not make any attempt to move to that state until the Spring of 1940 which is the time, as alleged in the petition, when the parties separated.
Mrs. Conner further testified that, in pursuing her investigation respecting Scoggins' domicile, she ascertained that his residence in Mississippi was maintained at the Clermont Harbor Inn in Hancock County; that this hotel has long since been closed and that its records are not available.
Mrs. Esther Gerdes, who was a sister of the deceased, stated that, during the years 1939 and 1940, she was living with her mother, Mrs. McCann, on Papworth Avenue ill Metairie Ridge, Jefferson parish; that, during the early part of the Summer of 1939, her brother moved over to Mississippi and was living at Clermont Harbor Inn; that he lived there from the Summer of 1939 throughout the year 1940; that she, her mother and her brother-in-law, Mr. Jimmie Gerdes, went to visit him at Clermont Harbor Inn on numerous occasions in 1939 and that, in 1940, the same parties made a number of trips to Mississippi, in the automobile of Mr. Clovis Dupont, to visit her brother at Clermont Harbor Inn. She further declared that her brother was a trainer of racing dogs and that, during the time he was living in Mississippi, he was not engaged in business in the city of New Orleans.
Mrs. McCann, the mother of the deceased, was not produced to corroborate this testimony as she was ill at the time the case was tried.
The testimony of James Gerdes is in substantial accord with that given by his sister-in-law, Esther Gerdes, as he stated that he, in company with Scoggins' mother, Esther Gerdes and Mr. Dupont, visited Scoggins at Clermont Harbor Inn on a number of occasions during 1939 and 1940. He, however, says that he knew that, during a part of the time when Scoggins was living in Mississippi, he was working as an automobile salesman in New Orleans.
Clovis Dupont, a friend of the Gerdes and Scoggins families, testified that he drove Mrs. McCann, Mrs. Gerdes and Mr. Gerdes in his automobile over to the Mississippi Coast on several occasions during the Summer of 1940 to visit Scoggins who was staying at Clermont Harbor Inn.
All of the foregoing testimony was heard by the trial judge on April 25, 1944, and the case was continued until May 18th in order to permit the defendants to adduce further evidence. When the hearing was resumed, the defendants placed on the stand Mr. Richard W. Ortte of New Orleans. He testified that he had previously resided at Clermont Harbor, Mississippi where he had been engaged in managing "Clermont Harbor Inn" for the Interstate Bank and Trust Company, the former owner of the property, and that he was in charge of the hotel from November 1933 up to September 1942, when it was closed. He was then asked whether he recalled that a man named "Henry J. Scoggins Jr." had resided at Clermont Harbor Inn from July or August 1939 through September 1940. His reply was that no such person had ever lived there; that, while the hotel was open the entire year, most of its business was transacted during the Summer vacation season; that it is possible that the deceased might have registered there during the Summer for a few days as a transient but that he was positive that the man could not have resided there for an entire year without his knowledge. He further stated that the hotel served meals "during the summer season" only; that, during the rest of the year, there were only three permanent guests, viz. — a daughter of the witness, a Mrs. Fairley and a Mrs. McKay; that Mrs. Fairley stayed at the hotel for three years and that his daughter and Mrs. McKay stayed for two years.
The evidence of Mr. Ortte is most impressive as he is unrelated to any of the parties in the case and obviously had no interest whatsoever in the outcome. His testimony, we think, when taken in connection with all of the other circumstantial evidence produced, makes manifest the conclusion that Scoggins never had an abode in Mississippi and that, when he alleged and testified to the contrary before the court in Mississippi, he perpetrated a fraud on its jurisdiction.
We have taken great pains in this case to review the testimony at length because of the serious nature of the charges made and the unfortunate result which will follow in the event the claims of Mrs. Richards and the defendants are decreed to be *Page 326 
well founded. In weighing the evidence, we have given due consideration to the fact that the courts of Mississippi have rendered a divorce decree to the deceased which we will assume is wholly valid on its face. As the result of this decree, Scoggins contracted matrimony with Mrs. Navarrette who, we have no doubt, was in perfect good faith. An innocent child has been born of this union which will unquestionably be made to suffer in the event the Mississippi divorce decree is pronounced null and ineffective in Louisiana. In these circumstances, the evidence should be clear and most convincing in order to sustain a conclusion that the Mississippi court was without jurisdiction. Yet, should it be found that the evidence plainly exhibits that the court rendering the judgment was without jurisdiction ratione materiae, our courts should not hesitate to declare the deceased's marriage to Mrs. Navarrette invalid since, under Article 2315, it is only the legal surviving spouse or other legal designated beneficiaries who are entitled to recover for death by wrongful act. And, in considering the evidence which has been presented in the case, the court should not be deterred or swayed by feelings of natural sympathy for innocent persons who may suffer injury in case their status or legitimacy is disturbed for, after all, our responsibility as judges is to apply the law as written to the facts as we find them even though our conclusion interferes with the regularity of lineage.
[14] The case made out by the intervenor and defendants is, we think, most convincing and we would be required to ignore all of the realities of the situation if we declared that Scoggins was a resident (or domiciled) in Mississippi for one year prior to the time he filed the action for divorce. To begin with the evidence shows, without contradiction, that the deceased had no business whatever in Mississippi; that he was born and raised in Louisiana; that he married a Louisiana woman; that he lived with her in New Orleans and raised his family in this state. He earned his livelihood here, both before and after the divorce and, subsequent to his trip to Florida with Mrs. Navarrette, he returned to New Orleans and again pursued his calling of "automobile salesman". He voted here and, in his registration application, he stated that he had lived here all of his life. Of course, as counsel for the plaintiff points out, the fact that Scoggins had his business here is not conclusive of the fact that he actually resided here, as we are aware that there are many persons residing and domiciled on the Mississippi Gulf Coast who work in Louisiana and commute from and to their homes each day. But people, who are bona fide residents of Mississippi while pursuing their vocations here, would not, we think, experience any difficulty in producing conclusive proof of their Mississippi domiciles. The only evidence submitted by plaintiff in this case to exhibit that Scoggins ever lived in Mississippi is the testimony of four people, relatives by marriage (or friends) who say that they visited him at Clermont Harbor Inn, plus the declaration by his lawyer, Mrs. Conner, who says that she ascertained that he was living there when she investigated his suit for divorce. But this evidence, we think, is clearly overcome and destroyed by the testimony of Mr. Ortte, who states that Scoggins was never a regular guest at Clermont Harbor Inn during the years 1939 or 1940. The testimony given by this witness coincides with other strong evidence submitted by the intervenor and defendants which shows not only that Scoggins was a registered voter in Louisiana but that, in April 1940, about six months before he filed his divorce action in Mississippi, he stated to a Louisiana notary public that he was a resident of New Orleans and that an automobile owned by him was to be kept at No. 603 Harmony Street, the matrimonial domicile he maintained with his first wife. All of these facts dovetail with the allegation contained in Scoggins' petition to the Mississippi court that he and his wife separated in June 1940, just four months before the divorce action was filed. The only difference between the allegation and the true facts is that Scoggins and his first wife separated while they were maintaining their matrimonial domicile on Harmony Street in New Orleans and not at a time when Scoggins was residing in Mississippi, as Mrs. Conners would have us believe.
Counsel for Mrs. Navarrette, in arguing that the evidence produced by the defendants and intervenor is wholly insufficient to rebut the presumptive validity of the Mississippi decree, states that the proof submitted is not inconsistent with a finding that the deceased was actually domiciled in Mississippi for a year prior to the time he instituted the divorce action. With reference to the registration applications of Scoggins, counsel says that they mean absolutely *Page 327 
nothing; that the first registration was applied for on August 8, 1939, or more than a year before the divorce action was filed. Therefore, he argues, it is perfectly consistent to say that, while Scoggins might have intended on August 8, 1939 to remain in New Orleans, he could have well changed his mind and moved to Mississippi on or before September 25, 1939 and have thereafter maintained a domicile in that state for one year prior to the time the divorce action was brought. Counsel further says that the registration application made by Scoggins on September 24, 1941 is of no probative effect for the reason it does not show that he did not acquire a domicile in Mississippi in 1939 and 1940.
It is true that neither one nor the other of the registration applications conclusively prove that Scoggins did not reside in Mississippi from September 25, 1939 until the day on which the divorce action was brought. However, these registrations are but links in a long chain of circumstances which show, to our satisfaction, that the deceased never acquired a bona fide domicile in Mississippi.
[15] Then again, counsel says that the declaration by Scoggins in the act of Chattel Mortgage passed in April 1940, that he was a resident of New Orleans, is not to be regarded as convincing proof that such was the fact. Our answer to this proposition is that this document, taken alone, would be quite inconclusive but, when considered with the other circumstances of the case, it is a strong indication of the verity of the statement made therein. And this is particularly so, in view of the fact that Scoggins not only stated that he lived in New Orleans but that the automobile which he had mortgaged would be kept at No. 603 Harmony Street, the matrimonial domicile of his first wife. Surely, the notary who passed the act could have only obtained this information from the deceased. If he was residing in Mississippi at the time he made this representation and was living separate and apart from Mrs. Richards, it is highly unlikely that he would have given the address at which she was residing as the place where the mortgaged property would be kept.
[16] Counsel for Mrs. Navarrette further contends that, at all events, Mrs. Richards is guilty of laches in that she did not file action to attack the legality of the Mississippi divorce prior to the time she intervened in these proceedings and that it would be against the public policy of the state to permit her to challenge the correctness of the Mississippi decree at this late date.
We find no merit in this contention. In the first place, there is considerable doubt concerning the recognition and application of the doctrine of laches in Louisiana as our laws of prescription are usually held to be paramount. Secondly, the second marriage was not confected until November 9, 1940 and Mrs. Richards says that she was without knowledge of it until sometime after it was contracted. Assuming that she learned of the divorce shortly after it was granted, a period of only two or possibly two and one-half years elapsed prior to the assertion of her rights. Under such circumstances, we do not think that she is guilty of laches in not filing her claim prior to the time she instituted her intervention. Furthermore, it is doubtful that, even if Mrs. Richards had desired to attack the Mississippi divorce, she could have maintained an action in Louisiana prior to the time when Mrs. Navarrette claimed to be Scoggins' widow. There is no showing that there was community property belonging to the first marriage or that, after the voluntary separation between the parties, the first wife was entitled to alimony. Under the doctrine of McKisson v. McKisson, supra, Mrs. Richards could not attack by direct action the judgment of the Mississippi court here in Louisiana. The first opportunity which was afforded her wherein she could prosecute her claims was when Mrs. Navarrette filed the present action.
We therefore hold that the Mississippi divorce granted to the deceased is invalid in Louisiana and cannot be given recognition here because the court was without jurisdiction ratione materiae, inasmuch as the deceased did not reside in Mississippi for one year prior to the commencement of the proceeding. Accordingly, it follows that Mrs. Richards is the legal surviving spouse of the decedent and that the claims of Mrs. Navarrette, individually and on behalf of her minor child, must be dismissed.
[17, 18] Being of this opinion, we finally consider the quantum of damages to which Mrs. Richards is entitled. As a consequence of the critical injuries received by Scoggins in the accident, he unquestionably suffered severe pain and anguish for three days before his death. Mrs. Richards is entitled, under Article 2315 of the Code, to *Page 328 
recover for the pain and suffering experienced by the deceased. In addition, she is vested with the right to recover damages for the sorrow and grief she sustained as a result of her husband's death which, in view of the very obvious circumstances in this case, we must assume to be negligible. She is also entitled to be recompensed for the loss of support resulting from the death of decedent which is merely a technical claim in this case for the reason that she was not being supported by her husband at the time of his demise. Of course, technically speaking, if she had become incapable of self support, after her voluntary separation from her husband, she could have applied to the Juvenile Court, as was done in the Wenzel and Dickinson cases, and have asserted the same attack on the Mississippi divorce as was prosecuted in this case. And, if the court would have come to a similar conclusion as we have in these proceedings, she would have been entitled to alimony. However, these observations are mere speculations and have little, if any, foundation in fact. After due consideration of all of the alleged items of damages as a whole, we think that judgment in Mrs. Richards' favor for $5,000 will afford ample compensation.
For the reasons assigned, the judgment appealed from in case No. 18,204 of our docket is reversed and it is ordered that there be judgment therein in favor of intervenor, Mrs. Estelle Richards, and against plaintiff, Mrs. Carmen Navarrette, divorced wife of Ovide J. Cosse, individually and as natural tutrix of the minor child, Carmen Helena Scoggins, decreeing that intervenor is the legal widow and surviving spouse of the decedent, Henry James Scoggins, Jr., and that the suit of Mrs. Carmen Navarrette, in her individual capacity and on behalf of her minor child, against the defendants, Joseph Laughlin, Inc., In Liquidation, Manuel Pelleteri and the Employers Liability Assurance Corporation, Ltd., be dismissed at her costs.
It is further ordered that the judgment appealed from dismissing the suit of Mrs. Estelle Richards, widow of Henry James Scoggins, Jr., against the defendants, docketed in this court under No. 18,218, be and it is reversed and that there now be judgment in said suit in favor of plaintiff, Mrs. Estelle Richards, widow of Henry James Scoggings Jr., and against the defendants, Joseph Laughlin, Inc., In Liquidation, Manuel Pelleteri and Employers Liability Assurance Corporation, Ltd., in solido, for the full sum of $5,000 with legal interest thereon from judicial demand until paid and for all costs.
Reversed in part; affirmed in part. *Page 376