ODOM, Justice.
 

 Plaintiff and defendant were married in New Orleans on July 24, 1923, and resided there until November, 1926, when they moved to Lafayette, in the parish of Lafayette, and there established their domicile. They lived together at Lafayette until September 30, 1927, when they separated, and have remained separate ever since.
 

 Two years after the separation, or in October, 1929, the defendant left the state of Louisiana with the avowed intention of remaining away from the state permanently. From Louisiana he went to Reno, Nev., where, on April 28, 1930, he obtained a judgment of divorce against his wife. He resided continuously without this state until April, 1934, when he returned and took up his residence at New Iberia, in the parish of Iberia. While residing there, his wife brought the present suit against him for divorce on the ground of four years’ continuous living apart, and for alimony. She alleged that her husband had obtained a divorce against her in the state of Nevada, but that said judgment was void and of no effect as to her, because, to quote from paragraph 16 of her petition, “said proceedings taken by the said Milton A. Voorhies against your petitioner in the said Second Judicial District Court for the State of Nevada, were in bad faith and ,are in no way binding upon your petitioner and did not in any manner affect the marriage of petitioner with the said Milton A. Voorhies, and are entirely null, void and of no effect as to your petitioner, because of the fact that said defendant went to the said city of Nevada for the express purpose of filing said divorce proceedings and did not have a bona fide residence in said state, and that your petitioner herein never at any time resided in the State of Nevada and that she was never personally cited in the said proceedings and did not in any manner recognize the said proceedings or- participate therein, and did nothing that would make the decree of the said court binding and
 
 *409
 
 ■effecting on your petitioner in the State of Louisiana or elsewhere.”
 

 The defendant, in answer, admitted practically all the allegations of plaintiff’s petition, except those pertaining to certain property rights and those attacking the validity ■of the judgment of divorce which he obtained in the state of Nevada. He especially averred in answer that he had, in good faith, established his residence in that state, and that all the proceedings leading up to the judgment and the judgment itself were in strict accord with the laws of that state, and that the judgment, which he pleaded as res ad judicata, was valid; that the said judgment dissolved forever the bonds of matrimony which had existed between him and the plaintiff; that therefore they were not husband and wife at the time her suit was filed, for which reason he excepted to the petition on the ground that it set out no cause or right of action.
 

 There was judgment for defendant rejecting plaintiff’s demands, and dismissing her suit at her costs, from which judgment she appealed.
 

 In oral argument before this court and in the brief filed by him, counsel for plaintiff stresses only two points. The first is that the trial court erred in permitting the defendant to introduce and file in evidence a copy of the judgment of divorce alone, his contention being that the entire transcript should have been filed; and, second, that the court erred in not holding that the testimony showed that the defendant did not, in good faith, establish a domicile in the •state of Nevada.
 

 Defendant admitted in answer that he and plaintiff had been living separate and apart continuously for more than four years at the time this suit was filed. His defense was that he was already divorced from plaintiff by judgment rendered in the state of Nevada. Over plaintiff’s objection, he was permitted to introduce and file in evidence a duly authenticated copy of said judgment. It is true, as argued by counsel for plaintiff, that, if this judgment was not admissible in evidence, there was nothing before the court to support defendant’s plea of res adjudicata, and he therefore had no defense. Counsel’s argument on this point is that in order to enable the courts of this state to give effect to a judgment rendered in another state, the whole record of the proceedings under which the judgment was obtained must be produced in order to show how far it may be conclusive. In support of this contention counsel cites Terrill et al. v. Van Bibber, 3 La.Ann. 634, Hockaday v. Skeggs, 18 La.Ann. 681, and McLaren v. Kehler, 23 La.Ann. 80, 8 Am. Rep. 592.
 

 We adhere to the rule stated in those cases, but .are of the opinion that it has no application in the present case. In the above-cited cases the plaintiffs were attempting to enforce in this state money judgments rendered in other states, and it was held that while the courts of this state will, under the full f&ith and credit clause of the Federal Constitution (article 4, § 1), recognize valid judgments rendered by the courts of other states, they reserve the right to have placed before them transcripts of the entire proceedings leading up to the judgments in order that it may be deter
 
 *411
 
 mined whether the judgments are valid and binding in the states where rendered. If they are, they will be recognized, and if not, they cannot be enforced here.
 

 In the case now before us, plaintiff alleged that her husband obtained a judgment of divorce against her in the state of Nevada. She did not allege in her petition, nor has her counsel argued orally or in brief, that the proceedings leading up to the judgment of divorce in Nevada were not in strict compliance with the laws of that state. She alleged that she was not personally cited in said proceedings, but she did not allege, nor is it now contended, that personal citation is necessary under the laws of Nevada. She has neither alleged nor contended that her husband had no grounds for divorce under the laws of that state or of this state. She alleged in paragraph 14 of her petition that “on or about the 22nd day of January, 1930, after defendant had resided in the city of Reno, State of Nevada, for a period of ninety days,, he did file * * * a petition for divorce against your petitioner.”
 

 There is no suggestion that ninety days is not sufficient time in which to become a citizen of Nevada. We understand that it is. In fact, plaintiff has neither alleged nor suggested any reason why we should have the entire transcript before us in order to determine whether or not the divorce judgment is valid in Nevada. Plaintiff’s sole ground of attack upon that judgment is that her husband did not, in good faith, establish a residence in that state. That is purely a question of fact.
 

 Under the circumstances, we think the trial judge properly admitted the judgment in evidence.
 

 The Nevada judgment is in the record,, and from its recitals we infer that the requirements of the laws of that state were fulfilled. It contains these, among other, recitals:
 

 “The defendant did not appear in person, but more than forty days having expired after due and legal service upon her by publication in the Nevada State Journal, and the default of the defendant being duly entered by the clerk by order of the court, the plaintiff was sworn and testified in his own behalf, and his residence for the time required by law was proven to the satisfaction of the court. All the records and files in this case were admitted in evidence, and the case being closed, the question was submitted for decision, and after due deliberation, the court finds as follows; the court finds that all the allegations of plaintiff in his complaint are true, and as conclusions of law, that he is entitled to a decree of divorce as prayed for in his complaint on the ground of extreme cruelty.”
 

 Then follows the decree dissolving the bonds of matrimony existing between the parties.
 

 The remaining question is whether defendant, in good faith, established his domicile in the state of Nevada prior to the date on which he there instituted divorce proceedings against his wife, the plaintiff in the present suit, and maintained his residence there until the final judgment of divorce was rendered. If he did, if he
 
 *413
 
 was a bona fide resident of that state during the entire time, the judgment of divorce rendered in Nevada is valid, and defendant and plaintiff were not husband and wife at the time this suit was filed, and the plaintiff has no cause of action for divorce against her husband. If, on the contrary, he went to the state of Nevada for the sole purpose of obtaining a quick, easy divorce with no intention of residing there permanently, as plaintiff alleges, he was guilty of a fraud which strikes down the entire Nevada proceeding and renders the judgment obtained there null and void. Courts and text-writers are in accord on these propositions. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Benton, 106 La. 494, 31 So. 123, 39 L.R.A. 135; Stevens v. Allen, 139 La. 658, on rehearing 674, 71 So. 936, 941, L.R.A.1916E, 1115; Lepenser v. Griffin, 146 La. 584, 83 So. 839; Aarnes v. Aarnes, 172 La. 648, 135 So. 13; 9 R.C.L. §§ 336, 338, 340, pp. 514-520, inclusive; 19 C.J. 368, §§ 834, et seq.
 

 If the judgment of divorce obtained by the defendant in Nevada is valid, it dissolved forever the bonds of matrimony which existed between him and plaintiff, and is a bar to the present suit brought by the wife. 9 R.C.L. 374.
 

 We understand that counsel for plaintiff concedes that if the defendant became a bona fide resident of the state of Nevada prior to the date on which he began his proceeding for a divorce, and remained a resident of that state until after the decree was rendered, the judgment, under repeated decisions of this court, should be recognized here, the legality of the proceeding under the laws of that state not being questioned, although he cites the case of Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1, where it was held that “the mere domicile within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action.”
 

 In the Haddock Case it was suggested by the court that while state courts might refuse to recognize foreign! judgments of divorce where the defendant was a nonresident of the state in which the decree was rendered on constructive service, yet they are at liberty to do so as a matter of comity. Courts of several states, including our own, do recognize such judgments as a matter of comity in the absence of a showing that fraud, imposition, or concealment was practiced by the party obtaining the divorce. As to the effect of the decision in the Haddock Case on the policy of state courts, it is stated in 9 R.C.L. § 337, p. 516:
 

 “The courts, recognizing the effectiveness of foreign divorces under the circumstances of the Haddock Case, were largely controlled by the belief that the full faith and credit clause of the Federal Constitution required recognition of such decrees; but the courts will not be obliged-to recede from their position as regards the effectiveness of foreign decrees since they are at liberty,
 
 *415
 
 as suggested in the Haddock Case, to recognize them upon principles of comity.”
 

 It is proper to say here that plaintiff does not contend that her husband concealed from her his intention to leave the marital ■domicile forever and to establish his residence in another state, where he expected to institute divorce proceedings against her, nor does she plead ignorance of the proceedings brought by him in Nevada. To the contrary, she alleges in her petition that he told her before he left this state what his intentions were, and alleges further that she was notified by him after he had established a domicile in Nevada, and by his counsel^ that the suit had been filed and that she knew that a final judgment of divorce was granted. While she alleges that no personal service was made on her, she does allege that she was notified of the institution and pendency of the suit and that both her husband and his attorneys wrote her requesting that she execute a power of attorney authorizing some attorney at law at Reno, Nev., to appear for her. She therefore had ample time and opportunity to contest the suit on the ground that her husband was not a bona fide resident of that state, or any other ground, if she had desired to do so. But she did not then raise that question, nor did she ever raise it until four years later, when she filed the present suit In the meantime the defendant contracted a second marriage.
 

 By making these observations, we do not mean to suggest that plaintiff is now estopped from contesting the validity of the Nevada divorce judgment. The marital status of parties being a matter of public interest, the plea of estoppel cannot prevail against a demand for divorce. Barringer v. Dauernheim, 127 La. 679, 53 So. 923. The observation is made in answer to the suggestion that courts should not recognize foreign divorce judgments against their own citizens, even as a matter of comity, if it appears that concealment, imposition, or fraud has been practiced by the party obtaining the decree. This court does, as do courts óf other states, recognize and give effect to such judgments in the absence of a reasonable showing that an innocent spouse has been imposed upon.
 

 The testimony convinces us that Mr. Voorhies, in perfect good faith, became a citizen of the state of Nevada. Prior to-the date on which he left this state he was employed by a public service corporation as engineer at a monthly salary of $250. Pie testified, and his testimony is not contradicted, that after he and his wife separated in 1927 her conduct towards him was such as to make it impossible for him to remain in this state and attend to his business and profession satisfactorily. He therefore resigned his position, stated to his wife and to others that he was going to leave the state of Louisiana permanently and establish a domicile elsewhere, and that wherever he might reside in the future, he expected to institute proceedings for divorce. He testified that it made but little difference to him where he went, because he could seek employment in one state as well as in another, but that wherever he went to reside, he expected to obtain a divorce. In October, 1929, he left this state and went to Reno in the state of Nevada. He testified
 
 *417
 
 that he went there with the intention of residing there permanently; that immediately after reaching Reno, he sought employment as an engineer; that, failing to obtain employment, he conceived the idea of promoting an ice plant to be located in that city, which he thought would prove to be a profitable investment, and that, having no capital of his own, he succeeded in interesting a capitalist named Culver in the proposition which he suggested; that Mr. Culver agreed to finance the enterprise and that the two worked out their plans, which took a considerable length of time. He testified that when the time came to advance the necessary capital for building the ice plant, Mr. Culver was unable to live up to his agreement because of the financial crash of 1930, and that therefore the plant was not built. He testified that he had spent practically all the money he had and that he again sought employment, but was unsuccessful. By invitation of a friend in California he visited that state with the view of securing a position, but failed. He returned to the city of Reno, where he says he would have remained if he could have secured employment. Being unsuccessful there, he went to the city of Houston, Tex., where he had friends and relatives. He was there employed by a public service corporation and remained there for some time, when he was sent by his employer to Wichita Falls, in that state, where he acted as general sales agent for the company. Subsequently he was called back to the city of Houston, where he maintained his connection with the public service corporation until April, 1934, when he was sent by his employer to the city of New Iberia, in this state, to take charge of the company’s business there.
 

 The testimony shows that he was never in the state of Louisiana at any time from October, 1929, until April, 1934, except on one occasion while passing through the state he stopped at Lafayette to get his father’s automobile, and that he took the automobile and immediately went to the city of Houston. He did not return to the state of Louisiana voluntarily, but was ordered to come to the state by his employer.
 

 There is no testimony in the record to contradict that of the defendant as to his intentions. It is therefore established that he left the state of Louisiana with the intention of remaining away permanently and that he went to the state of Nevada with the intention of establishing a permanent residence there. Fie admitted that he went to the state of Nevada because he understood that the laws of that state required only a short period of time in which to become a citizen there and that inasmuch as he expected to seek a divorce against his wife wherever he went, this influenced him in going to that state. Because he went to that state in order to facilitate his obtaining a divorce and took advantage of the laws which his new domicile afforded him, affords no ground, under the circumstances, for holding that he did not establish a bona fide residence in that state.
 

 We have carefully considered the testimony, including the letters and telegrams which the defendant wrote and sent to the plaintiff and her sister in New Orleans, as well as the attempt which defendant made to keep his wife from contttüag
 
 *419
 
 the divorce proceedings in Nevada, and from this testimony we conclude, as did the trial judge, that he was a bona fide resident of Nevada at the time he instituted his suit, and that therefore plaintiff's demands were properly rejected by the trial court.
 

 Plaintiff alleged that during the existence of the community between her and defendant there was certain property accumulated in which she is entitled to an undivided one-half interest. Defendant admitted that he owned stock in the Dan Chevrolet Company amounting to $2,000, which was acquired in the year 1927, although said stock now stands in the name of his mother. If that property was acquired in 1927 it fell into the community which then existed between plaintiff and her husband, and she is entitled to a half interest therein. The judgment appealed from rejected plaintiff’s demands in toto. We think the court should have reserved her right to force a settlement of the community.
 

 For the reasons assigned, the judgment appealed from is amended so as to reserve plaintiff’s right to recover whatever interest she may have in such property as may have belonged to the community which formerly existed between her and her husband, and, as thus amended, it is affirmed.