24 So.2d 672

**NAVARRETTE v. LAUGHLIN et al.**

**RICHARDS v. JOSEPH LAUGHLIN,**
Inc., et al.

No. 37787.

Dec. 10, 1946.

Application for Rehearing Withdrawn
Jan. 14, 1946.

Benjamin M. Goodman, of New Orleans, for appellant.

Edward Rightor, L. V. Alba, and W. H. Sellers, all of New Orleans, for appellees.

PONDER, Justice.

The primary question involved in this review is whether or not a certain decree of divorce rendered in the State of Mississippi is to be given full faith and credit.

The Court of Appeal, 20 So.2d 313, arrived at the conclusion that the plaintiff in

the divorce suit in Mississippi had not established a bona fide domicile in that state at the time the decree was rendered and refused to give effect to the decree.

Henry J. Scoggins, Jr., was married to Mrs. Estelle Richards on January 23, 1923, in the City of New Orleans. One child was born of this union during the month of November, 1923, namely, Vela Dolores Scoggins, who married Jack Favaro on May 3, 1941.

A decree of divorce from his wife, Mrs. Estelle Richards, was obtained by Henry J. Scoggins, Jr., on November 7, 1940, in Hancock County, State of Mississippi. On November 9, 1940, Henry J. Scoggins married Mrs. Carmen Navarrette in Hancock County, Miss. One child was born during this second marriage on November 30, 1941, namely, Carmen Helena Scoggins.

On February 12, 1943, Henry J. Scoggins, Jr., died in the City of New Orleans as the result of an automobile collision.

These consolidated cases were brought against Joseph Laughlin, Inc., the owner of an ambulance, its operator, and the surety, Employers Liability Assurance Corporation, Ltd. They are based on the ground that the negligent operation of the ambulance was the cause of Scoggins' death.

Mrs. Carmen Navarrette, individually, and on behalf of her minor daughter, Carmen Helena Scoggins, is seeking to recover damages resulting from her husband's death.

Mrs. Estelle Richards is seeking to recover the damages caused by the death of her divorced husband on the ground that the divorce decree rendered in Hancock County, Miss., is invalid for the reason that the court which granted the divorce did not have jurisdiction over the domicile of Henry J. Scoggins, Jr. She takes the position that she is still the legal wife of the decedent.

On trial of the case, the lower court awarded damages in the sum of $7,500 to Mrs. Navarrette individually as widow of the decedent and $7,500 to her for the use and benefit of her minor child, or a total of $15,000. The defendant insurance company was held liable in solido with the other defendants for not more than $10,000, the limit of its liability under its policy. On the same date, the lower court gave judgment dismissing Mrs. Richard's suit. On appeal, the Court of Appeal reversed judgment dismissing Mrs. Richards' suit. and her minor child were concerned and dismissed her suit. The demands of Mrs. Richards were recognized, and she was awarded $5,000 with legal interest from judicial demand and costs against the defendants in solido. Mrs. Navarrette applied to this Court for review which was granted. The matter has now been submitted for our disposition.

The reason we granted a review in this case was that we were of the opinion that the Court of Appeal was in error when it refused to give full faith and credit to the decree of the Mississippi court.

It is urged on this review that Mrs. Richards and the defendants did not have the right to collaterally attack the decree of the Mississippi court.

■ It is well settled that anyone at interest has the right to collaterally impeach a decree of divorce rendered in another state by proving that the court had no jurisdiction. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. ——, 157 A.L.R. 1366.

■ The judicial power to grant a divorce is founded on domicile. Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366; Williams v. North Carolina, supra. Also see: Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1; Davis v. Davis, 305 U. S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518.

■ The only question we can consider with respect to the Mississippi decree is the jurisdictional requirement of domicile. Williams v. North Carolina, supra; Voorhies v. Voorhies, 184 La. 406, 166 So. 121; State v. Wenzel, 185 La. 808, 171 So. 38; State v. Dickinson, 191 La. 266, 185 So. 20.

■ The burden of undermining the verity of the Mississippi decree rests heavily upon the assailants.

■ This Court will give full faith and credit to divorce decrees rendered by courts of other states except where it has been conclusively shown by sufficient proof that the court rendering the decree did not have the jurisdictional requirement of domicile. Williams v. North Carolina, supra; Voorhies v. Voorhies, supra; State v. Wenzel, supra; State v. Dickinson, supra.

The testimony of the attorney who brought the divorce proceedings in Mississippi, whose reputation has not been questioned, and that of four other witnesses is to the effect that Scoggins was residing at the Clermont Harbor Inn, Clermont Harbor, Miss., at the time and sometime prior to the filing of the divorce proceedings.

The attorney testified that prior to filing the divorce suit she made an independent investigation which revealed that Scoggins had been living approximately a year and a half at the Clermont Harbor Inn, Clermont Harbor, Miss.

Mrs. Estelle Richards and her daughter's testimony is to the effect that Mrs. Richards and Scoggins separated sometime in 1939. Some stress has been laid on the fact that Mrs. Richards signed a statement in California to the effect that the separation took place in 1940. The evidence is not clear as to who presented the statement to her, but the fact that the insurance company later advised her to enter suit indicates that the party was an agent of the insurance company. This statement was not sworn to and is entirely written, with the exception of Mrs. Richards' signature, in the hand-writing of another person. Mrs. Richards testified that when she signed that statement she was ill and did not give it any particular attention. The use of this statement was the only effort made to impeach her testimony. Under such circumstances, we must accept her sworn testimony given on the trial.

The defendants did not produce a single witness to prove that Scoggins actually re-

sided at any place other than Clermont Harbor during this period of time.

The defendants rely on documentary evidence and the testimony of the manager of the hotel who had charge of it at the time it is alleged that Scoggins resided there.

The documentary evidence consists of two registration certificates, which entitled Scoggins to vote, wherein Scoggins declared under oath that he had resided in the Parish of Orleans and the State of Louisiana since birth, a chattel mortgage wherein it is recited that Scoggins was a resident of Orleans Parish, State of Louisiana, and the payroll of Cobb & Whitehead, automobile dealers, wherein he was listed as an automobile salesman for that company.

The former proprietor of the Clermont Harbor Inn testified that Scoggins was not registered at the hotel and did not reside at the Clermont Harbor Inn during the years 1939 and 1940.

The register of the hotel was not produced, and it was not shown that it had been lost or destroyed. The former proprietor merely stated that he did not know where it was at the time of the trial. The register would be the best proof as to whether Scoggins was registered at the hotel at that time. In the absence of its production without showing that it had either been lost or destroyed, a presumption is created that Scoggins was registered at the Clermont Harbor Inn at that time. Moreover, the Mississippi attorney testified that she was informed prior to filing the divorce suit by the aforementioned manager

of the hotel that Scoggins was registered in the hotel and resided there.

Five witnesses testified positively that Scoggins resided at the inn. His former wife and his daughter stated that the separation took place in 1939, and there has been no showing that he actually resided at any other place.

The certificates entitling him to vote, the chattel mortgage, and the payroll of the company aforementioned are not sufficient to overcome the clear and positive proof that Scoggins actually resided at Clermont Harbor Inn.

Clermont Harbor, Miss., is within fifty miles of New Orleans, Louisiana, and it is common knowledge that many persons residing on the Mississippi Gulf Coast work in New Orleans. The fact that Scoggins was an automobile salesman for a company in New Orleans does not disprove his residence in Mississippi.

Moreover, the record in this case discloses that shortly after he contracted his second marriage, Scoggins and his wife went to Miami, Fla., and engaged in the business of coaching greyhounds. They resided there some six months before they returned to New Orleans.

In the Williams case, supra, the parties left North Carolina and resided in Nevada only six weeks and immediately returned to North Carolina after they secured their respective decrees of divorce. We can readily see under such circumstances that inference could be drawn that the parties went to Nevada for the sole purpose of

securing the divorce with no intention of establishing a bona fide domicile.

In the present case, Scoggins undoubtedly resided in Mississippi more than one and one-half years prior to the time the decree of divorce was rendered. Even after the decree was rendered, he did not return to Louisiana but went to Florida and engaged in business, remaining there some six months. He was absent from this State at least two years.

It is difficult to ascertain a person's intention, and the intention is essential in the establishment of a bona fide domicile.

Under these facts, we do not feel that we could draw the conclusion that Scoggins did not intend to establish a bona fide domicile in Mississippi. He had separated from his wife, and he had to live somewhere. No one has testified that he actually lived elsewhere than in Mississippi. In his petition for divorce, Scoggins alleged that he had resided in the State of Mississippi for more than a year. The Mississippi court passed on its own jurisdiction, and its decision in this regard is entitled to respect. We do not feel that we would be warranted in refusing to give full faith and credit to the decree of divorce under the facts in this case. We could not say, under the facts in this case, that the Mississippi court did not have jurisdiction.

The burden was upon the defendants to show with clear and positive proof that the Mississippi court was without jurisdiction, and this burden, they have failed to sustain.

We might point out in conclusion that Mrs. Richards, Scoggins' divorced wife, admitted, in her testimony, that she never thought of attacking her husband's divorce until after he died.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is reversed and set aside, and the judgment of the Civil District Court for the Parish of Orleans is reinstated and made the judgment of this Court. All costs to be paid by the respondents.