SAVOY, Judge.
This suit involves the distribution of one-half of the funds derived from a sale at public auction to effect a partition by lici-tation of two acres of land in St. Landry Parish. The dispute on appeal is between the two defendants, who were formerly married, Charles W. Reynolds, defendant-appellee, and Katie Thrash, defendant-appellant.
On July 8, 1948, Charles W. Reynolds, while domiciled in Orange County, Texas, and living with his former wife, Katie Thrash, purchased an undivided one-half interest in two acres of land situate in St. Landry Parish, Louisiana.
Charles W. Reynolds filed suit for divorce in the District Court of Orange County, Texas, on November 29, 1949. The suit was answered by Katie Thrash Reynolds, with a reconventional demand or cross-action against Charles W. Reynolds for divorce, requesting an order for a sworn inventory and appraisal of all community property, for a division of the community property and the restoration of her maiden name.
In response to a court order, Charles W. Reynolds signed a notarized statement which read as follows:
“Comes now Charles Reynolds, and in obedience to the order entered by this Honorable Court on the - day of November, 1949, files an inventory of all property belonging to the community estate of the plaintiff, Charles Reynolds, and the defendant, Katie Reynolds.
“Plaintiff states herein that the only community property accumulated during the marriage of plaintiff and defendant were certain linens, small house furnishings and bedding, which the defendant, Katie Reynolds, now has in her possession.
“I, Charles Reynolds, do herewith state under oath that the above listed property is a complete and accurate accounting of all property known by this plaintiff to have been acquired during the marriage of said plaintiff and defendant.”
On February 3, 1950, judgment was rendered, granting the divorce in favor of the wife and dividing the community property, and providing in part as follows:
“ * * * It is therefore ordered, adjudged and decreed by the Court that the same is hereby set aside and awarded to cross-plaintiff as her separate estate, and that all other property accumulated during the marriage, if not specifically named and described, is herewith set aside as the separate property of cross-defendant, and is *226 from the date of this judgment, his separate estate.”
On August 24, 1954, a suit was filed for partition by licitation of the two acres in Louisiana by some of the co-owners in in-división, namely, Patricia Gayle Wayne (Cascio) and Kenneth Gale Wayne (Cas-cio). Service was had upon Charles W. Reynolds, a co-owner, through a duly appointed curator ad hoc, since he was an absentee. No service was made upon Katie Thrash, nor was she mentioned in the proceedings. In due course, the property was sold at public auction on October 23, 1954, to Dewey J. LeDoux for $6,600 cash. It was later determined that Charles W. Reynolds was divorced, so in the same proceeding suit was then instituted by Dewey J. LeDoux to be declared owner of the property, and for the court to determine the distribution of one-half of the funds from the sale on deposit in the registry of the court as between Charles W. Reynolds and Katie Thrash. Since both Charles W. Reynolds and Katie Thrash were absentees, curators ad hoc were appointed for them. The curator for defendant, Katie Thrash, filed an answer stating that the Texas decree should not be recognized in Louisiana for the reason that the Texas court attempted to determine ownership of Louisiana realty; that the Louisiana court is the only one which can determine questions dealing with ownership of real estate in this state. He prayed that Mrs. Thrash be decreed to be the owner of an undivided one-fourth interest in the property in litigation. At the trial, it was stipulated between Charles W. Reynolds, Katie Thrash and Dewey J. LeDoux that Dewey J. Le-Doux should be recognized as the owner of the property “with full reservation on the part of Charles W. Reynolds and his divorced wife, Katie Thrash Reynolds, to claim the funds on deposit in the registry of the court.”
The lower court decreed Dewey J. Le-Doux to be the owner of the property in question, and recognized Charles W. Reynolds as entitled to the entire sum of $2883.24 on deposit in the court registry. From this decision, the defendant, Katie Thrash, prosecutes this appeal.
Counsel for appellee contends that the Texas judgment should be given full faith and credit by the Louisiana courts, citing Sheard v. Green, 219 La. 199, 52 So.2d 714, 716, and Article IV, Section 1, of the Constitution of the United States dealing with full faith and credit.
Counsel for appellant takes the position that the Texas decree is null insofar as it attempts to adjudicate rights to real estate in Louisiana, being violative of the 14th Amendment to the United States Constitution dealing with due process, and hence, said judgment is not entitled to full faith and credit in this state.
In the Sheard case, supra, a separation contract or agreement, which was attacked on the grounds of fraud in a Louisiana court, was entered into four days before rendition of the divorce in Arkansas. The opinion does not show whether any real estate was involved. The Arkansas judgment of divorce incorporated the prior agreement in the judgment of divorce. The Supreme Court of Louisiana held:
“Under our law, such a contract as the one involved in this suit would be absolutely null and void if entered into prior to judicial separation or divorce. Civil Code Articles 1790, 2446; Guillot v. Guillot, 141 La. 86, 74 So. 704; Marks v. Loewenberg, 143 La. 196, 78 So. 444; Russo v. Russo, 205 La. 852, 18 So.2d 318. The only way such an agreement under our law is binding is to have it incorporated in the judgment of divorce or have it entered into subsequent to the dissolution of the marriage community. The attack on the contract in this case under Louisiana law is an attack on the judgment of divorce and the only question that this court can consider with respect to a divorce decree of a sister state is the jurisdictional requirement of domicile. Navarrette v. Laughlin, *227 209 La. 417, 423, 24 So.2d 672 and cases cited therein.”
The Sheard case, supra, is different from the one before us in two important particulars. First, in the case at bar, the evidence does not show an agreement which was incorporated into the Texas 'judgment of divorce. Secondly, we are here dealing with the ownership of .real property located within the State of Louisiana.
It should be noted that the Sheard case, supra, and the other cases cited by appellee herein, which state that “the only question that this court can consider with respect to a divorce decree of a sister state is the jurisdictional requirement of domicile”, are all referring to the question of personal status, and other rights jurisdic-tionally within the purview of that Court.
When rights to real estate are concerned, there is a jurisdictional requirement of “res” as well as jurisdiction over the person.
This general proposition is discussed in 51 A.L.R. 1081, to-wit:
“ Tt is a fundamental maxim of international jurisprudence that every state or nation possesses an exclusive sovereignty and jurisdiction within its own territory. A consequence of this maxim is that no state can by its laws, and no court, which is but a creature of the state, can by its judgments or decrees, directly bind or affect property beyond the limits of that state. * * * Any attempt by one state to give to its courts jurisdiction beyond its own limits over persons domiciled or property situated in another state is a usurpation of authority, and all judicial proceedings in virtue thereof are held utterly void; and a statute, however comprehensive, should not be construed as conferring such jurisdiction.’ 7 R.C.L. 1058.
“These principles find application in the class of cases within the scope of the present annotation, which is limited to the question of jurisdiction in actions for divorce. And the rule is well established that in divorce proceedings the courts of one state cannot, by the decree, directly affect the legal title to land situated in another state, unless allowed that effect by the laws of the state in which the land is situated.”
Also, see 145 A.L.R. 583, to-wit:
“As preliminary to the discussion of the question under annotation, it should be remembered that a decree rendered in one state cannot directly operate upon land in another state, and that such a decree which purports directly to affect the title of land in another state will not be recognized or given effect by the courts of the state where the land is located. As supporting this proposition, see, among others, the following illustrative cases: * * Putnam & Norman v. Conner (1918) 144 La. 231, 80 So. 265; Butler v. Bolinger (1931) 16 La.App. 397, 133 So. 778; * * *
“A court of one state, however, having jurisdiction over the parties, may render a personal decree, binding upon the person of the parties, and enforceable in that state by contempt proceedings, requiring the conveyance of land in another state or otherwise controlling the acts of the parties regarding property outside of the jurisdiction of the court rendering the decree. * 5{5 * »
In the Butler case, supra [16 La.App. 397, 133 So. 781], the court stated:
“Under the full faith and credit clause of the Constitution of the United States (Const.U.S. art. 4, § 1) judgments of other states must be given the same effect as are given them in the state where rendered, but only so far as the personal status of the parties is concerned. The decree of Cali *228 fornia authorized the living apart of John L. Butler and his wife, and we must give the judgment that effect, and it would be a bar to an action for separation from bed and board in this state, but the effect it has on immovable community property located in Louisiana will have to be governed by the laws of Louisiana. The California court had no jurisdiction over the Louisiana immovables. To hold otherwise would be to hold that it was an action in rem without jurisdiction over the res. Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A. (N.S.) 924, 17 Ann.Cas. 853.
“Real estate is governed by the law of its situs, and a decree of another state does not operate directly upon the property nor affect the title. Carpenter v. Strange, 141 U.S. 87, 11 S.Ct. 960, 35 L.Ed. 640; Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 28 L.Ed. 101; Massie v. Watts, 6 Cranch, 148, 3 L.Ed. 181.
“The validity of a judgment of another state where it operates on property within that state will not be inquired into by the courts of this state, but its extraterritorial effect on rights to immovables in this state will not be tolerated. The effect of the California decree was to legally authorize Butler and his wife to live separate ■ and apart, and such a decree in this state is to dissolve the community. After the dissolution, husband and wife are tenants in common or joint owners of the property located in Louisiana, and the wife has the legal right to sell her undivided one-half of the property, as was done in this case.”
Since the Texas court did not have authority to determine the ownership of the property in Louisiana, we are not constrained to give the Texas judgment full faith and credit insofar as it may attempt to directly pass title to the appellee herein. The courts of Louisiana are the tribunals with the proper jurisdiction to determine the ownership of this property.
We are convinced that the Texas court did not in fact attempt to extend its jurisdiction outside of its territory to determine the question of ownership of real property located in Louisiana. The sworn itemized statement of appellee herein listed only movable property. Since both ap-pellee and appellant herein were residents of Orange County, the Texas court had full jurisdiction over the parties before it and their movable effects. The movable items are further listed within the judgment, and no mention is made of any real property located in Louisiana. We therefore hold that the Texas court was without jurisdiction over the “.res” to and, in fact, did not determine the ownership of the two acres of land in Louisiana.
The appellee also contends that “the decree rendered by the Texas court as it included a division of the community property, at the request and with the approval of the parties, constituted a contract in the highest sense of the term,” citing Butler v. Bolinger et al., supra.
Although the Court in the Butler case, supra, referred to the California judgment as a “contract” in the highest sense, it was not concerned with whether this “contract” would be sufficient under the laws of Louisiana to transfer real property. In the Succession of Larendon, 1887, 39 La.Ann. 952, 3 So. 219, the Court quoted approvingly the commentaries on the Conflict of Laws by Story, as follows: “ * * * that the laws of the place where such (real) property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer and the solemnities which should accompany them. The title, therefore, to real property can be acquired, passed, and lost only according to the lex rei sitoe.” Page 708, No. 424.
In the Sheard case, supra, the Court required that an agreement be embodied in the judgment. We interpret this to mean *229 an agreement, signed by the parties according to the form required by Louisiana law. In any event, the facts of the case before us do not show an agreement as to the division of the community property, but is rather a judicial determination of the division of the movable property within its jurisdiction. We did not find from the facts of this case that any agreement or transfer of rights in the Louisiana property was made by the appellant in the form required under our law.
Our decision herein was reached following the Louisiana law, with recognition that there is conflict among' the decisions of the various states. See 145 A.L.R. 584, 585, to-wit:
“A court of one state, however, having jurisdiction over the parties, may render a personal decree, binding upon the person of the parties, and enforceable in that state by contempt proceedings, requiring the conveyance of land in another state or otherwise controlling the acts of the parties regarding property outside of the jurisdiction of the court rendering the decree. * *
“And a transfer of the land by the owner in obedience to the decree of the foreign court which had acquired jurisdiction over him will be recognized and given effect by the courts of the state in which the land was situated. * * *
“But if no conveyance has been made in obedience to the decree, the decree itself will not ordinarily be enforced or .recognized as having the effect of transferring the title at the situs of the property, any more than a foreign decree directly operating upon, or affecting the title to, local real property would be enforceable at the situs of the land. * * *
“The question then arises whether, although a foreign decree cannot by its own force, without an actual conveyance in obedience thereto by the party affected, operate upon the title of land in the state, and will not be recognized as having that effect, does the adjudication by it of the facts or questions of law or the findings necessary for its rendition constitute res judicata, so as to be conclusive upon the same parties or their privies in an action at the situs of the land involving a determination of the title to or rights in that land.
“In many of the cases the view is taken that the findings of facts or the questions of law adjudicated by the foreign decree constitute res judicata and are conclusive upon the pax-ties, even under the assumption or express concession that the foreign decree itself, without an actual conveyance of the land by the person affected thereby, would have no operative effect upon the title to the land.
* * * * * *
“This view has been upheld as against the objection that its indirect effect is to .render the foreign decree, otherwise inoperative, operative upon the title of the land in the state.”
It should be pointed out that the discussion immediately above relating to “res judicata”, without an actual conveyance of the land 'by the person affected thereby, is directed to jurisdictions other than Louisiana. The law of Louisiana, as previously interpreted by the courts of this state, requires an actual transfer of the land in obedience to a court decree. This transfer must be made with regard to the mode by which titles to real estate situated in this state are transferred from one person to another.
This principle was enunciated in Putnam & Norman v. Conner, supra, an action in Louisiana by certain creditors of a Mississippi bank for which a receiver was appointed in Mississippi, to annul a sale of real property in Louisiana made by the receiver of the bank under orders of the Chancery Court in Mississippi. The Court held that the Chancery Court of Mississippi *230 had jurisdiction to order the receiver appointed by the court to transfer the title to the real estate situate in Louisiana, because it had jurisdiction over the receiver and over all the property under his administration as an officer of the court. The Court held [144 La. 231, 80 So. 267]:
“Section 1 of article 4 of the federal Constitution means that full faith and credit shall be given in each state to the judicial proceedings of every other state in which the court that rendered the proceedings had jurisdiction. A state court cannot, by invoking the full faith and credit clauses of the federal Constitution, go beyond its territorial jurisdiction, and control or regulate the mode of transfer of titles to real estate in another state, contrary to the lex loci rei sitae. The question to be determined, therefore, is whether the chancery court of Mississippi had jurisdiction to order the1* receivers appointed by that court to transfer the title to the real estate situated in Louisiana. And the answer is that, having jurisdiction over the receivers and over all property under their administration as officers of the court, the court had jurisdiction to order them to sell and dispose of the property, wherever it was. The question whether the transfer was made in violation of the lex loci rei sitae does not pertain to, or determine, the question of jurisdiction of the court — no more than if the sale had been ordered and confirmed by a Louisiana court. For the courts of another state can, as well as the courts of this state, proceed in accordance with, or in violation of, the laws of this state, with regard to the mode by which titles to real estate situated in this state are transferred from one person to another.
“In Muller v. Dows, 94 U.S. 444, 24 L.Ed. [207,] 209, it was said:
“ ‘It is here undoubtedly a recognized doctrine that a court of equity, sitting in a state and having jurisdiction of the person, may decree a conveyance by him of land in another state, and may enforce the decree by process against the defendant. True, it cannot send its process into that other state, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title. And there seems to be no reason why it cannot, in a proper case, effect the transfer by the agency of the trustees when they are complainants.’
“In Phelps v. McDonald, 99 U.S. 298, 25 L.Ed. 473, it was said:
“ ‘Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitae, which he could do voluntarily, to give full effect to the decree against him.’ ”
We have previously stated that the Texas court did not in fact try to determine the ownership of the Louisiana property, either directly or indirectly. If, however, the Texas court should have tried to determine the personal rights of the parties before it to the Louisiana realty, in the instances where this is permissible, then the only manner in which it could do so would have been to order Katie Thrash, appellant herein, to deed to Charles W. Reynolds, according to the form required by our laws, her undivided interest in the property, under penalty of contempt of court. This was not done.
There is an additional reason why the Texas decree is not enforceable in Louisiana. The Texas decree does not describe the Louisiana property. LSA-R.S. 13 :4202 declares as follows:
“All final judgments of district courts, courts of appeal and the su *231 preme court affecting the title to immovable property shall particularly describe the property thereby affected.”
In Emery v. Succession of Martel, La. App., 10 So.2d 267, the Court held:
“A purported judgment decreeing that plaintiff, under a written assignment executed by decedent during his lifetime, was owner of a one-tenth interest in any and all oil land leases and mineral oil profits owned by decedent, which contained no description of mineral leases, rights, or profits which plaintiff should have, was unenforceable. * * * ”
It is undisputed that an undivided one-half interest in the land in question formed a part of the community existing between Katie Thrash and Charles W. Reynolds. At the time of the divorce each party became vested with an undivided one-fourth interest each in the Louisiana property. Since Katie Thrash and Charles W. Reynolds have stipulated that Dewey J. LeDoux should be .recognized as owner of the Louisiana land in question, we need only to decide the distribution of the funds on deposit in the registry of the court derived from the sale of the one-half interest which formerly formed a part of their community property. We hold that these funds in the amount of $2883.24, should be divided equally between appellant, Katie Thrash, and appellee, Charles W. Reynolds.
After the case was appealed to this Court, counsel for Charles W. Reynolds and Katie Thrash, by joint stipulation with counsel for plaintiff, Dewey LeDoux, asked that the judgment of the lower court be amended so as to fix and tax as costs the fee of H. Garland Pavy as curator ad hoc for Katie Thrash, and the fee of Lawrence B. Sandoz, Jr., as curator for Charles W. Reynolds.
The record reveals that counsel for Reynolds did not appeal from the judgment of the lower court, nor did he answer the appeal. Consequently, we are powerless to amend the judgment to provide for attorney’s fees for Lawrence H. Sandoz, Jr.
This Court will next consider the fees requested by Garland Pavy. Pavy signed the brief as curator ad hoc and attorney for Katie Thrash. During the course of the trial, he stipulated that plaintiff, Dewey LeDoux, be decreed to be the owner of all of the real estate described in this suit and that Katie Thrash and Charles W. Reynolds be regulated to the funds in the .registry of the court. If Pavy had acted in capacity as curator ad hoc only, he could not have agreed to a consent decree.
The powers of a curator ad hoc must be strictly limited to those conferred by law. They cannot be extended to the performance of any other acts than such as tend to the defense and rights of the absentee. He cannot consent to any judgment being rendered against the absentee. Edmonson v. Mississippi & A. R. Co., 13 La. 282; Collins v. Pease’s Heirs, 17 La. 116; Hill v. Barlow, 6 Rob. 142; Hyde v. Craddick, 10 Rob. 387.
The record discloses also that Mr. Pavy signed as the surety on Mrs. Thrash’s appeal bond. We conclude that in view of the above acts, he was acting in his capacity as her employed attorney, rather than as a curator ad hoc. His claim for attorney’s fees is accordingly denied.
If we are mistaken in this view, Mr. Pavy may apply for a re-hearing and establish that he is acting simply as curator, and the Court will consider granting a rehearing fixing his fees and decreeing Mrs. Thrash to be the owner of an undivided one-fourth interest in the property de.-scribed in this suit.
For the reasons assigned, the judgment of the lower court is affirmed insofar as it decrees Dewey J. LeDoux to be the owner of the real estate described in the judgment of the lower court.
*232 The judgment is reversed insofar as it decrees Charles W. Reynolds to be the owner of all of the funds in the registry of the court, and judgment is hereby rendered decreeing Katie Thrash and Charles W. Reynolds to be each the owner of an undivided one-half interest in the funds in the registry of the court in this suit.
Charles W. Reynolds is to pay all costs of court in the lower court and on appeal.
Affirmed in part, reversed in part, and rendered.