YELVERTON, Judge.
The Ramos Group, Inc. filed suit in the proper Louisiana court seeking to have a money judgment of the Sixteenth Judicial District Court of the State of Missouri made executory in this State. The suit was filed against Dr. Joseph Villard as judgment debtor. The Missouri judgment, dated May 21, 1981, was for the amount of $67,350.04. A duly authenticated copy of the judgment sought to be made executory was annexed to the petition in compliance with La.C.C.P. Art. 2541.
Villard answered in proper person denying that he had ever been in Missouri and denying that he had ever heard of The Ramos Group, Inc. By supplemental answer filed by his attorney, he added the further defense that the Missouri judgment was not entitled to full faith and credit because the rendering court did not have jurisdiction.
The trial court, exercising its right to make an independent determination of the jurisdiction of the Missouri court which had thus been put at issue, after trial concluded that Missouri did not have jurisdiction to render the judgment. The court’s reasons were that although subject matter jurisdiction existed, personal jurisdiction did not because of insufficient contacts and also because there was no service of the initial suit.
After judgment was signed rejecting the demands of the Missouri corporation, plaintiff applied for a new trial alleging that it had not received in time for the trial pertinent evidence which it had requested from the Missouri court, including (1) the original return receipt for service of the petition on Joseph Villard, (2) copy of the cover letter sent to Villard accompanying the petition, and (3) a copy of the certificate of mailing signed by the treasurer of The Ramos Group. The motion for a new trial was denied. This appeal followed.
We find it necessary to reverse the district court and render judgment in favor of plaintiff. We do so because we find that the trial court made an error of law in its determination of the burden of proof, and because of that it was clearly wrong in its evaluation of the evidence.
In its reasons for judgment, the trial court declared that “under the circumstances in this case, the defendant is entitled to the benefit of any reasonable doubt.” This, in our opinion, was tantamount to requiring that the plaintiff prove Missouri jurisdiction beyond any reasonable doubt. The exact opposite is the law. The favorable presumption in this type of case lies not with the defendant but with the plaintiff, and to overcome the presumption of jurisdiction that favors the foreign decree, the defendant attacking jurisdiction must prove its absence by clear and positive proof. As was stated by the court in Holden v. Holden, 374 So.2d 749 (La.App. 3rd Cir.1979):
Although the jurisdiction of a court rendering a judgment is open to judicial inquiry when enforcement of that judgment is sought within this State, there is a general presumption that the decree is valid and the burden of undermining such *867 a judgment rests heavily upon the assailant. Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946); Berry v. Berry, 307 So.2d 821 (La.App. 3 Cir.1975). The burden to establish that the court of the rendering state was without jurisdiction can only be discharged by clear and positive proof. Turpin v. Turpin, 175 So.2d 357 (La.App. 2 Cir.1965).
Under the proper burden of proof test, we find that the plaintiff proved its case and that the defendant failed to prove that the Missouri court was without jurisdiction, for the reasons which we will now explain.
THE MISSOURI PROCEEDINGS
The Missouri suit was filed against two individuals, the defendant Dr. Villard and Clifford Eldridge, both residents of Alexandria, Louisiana. A copy of the Missouri pleadings was admitted in evidence in the Louisiana court. These pleadings indicate that The Ramos Group, Inc., is an architectural corporation located in Kansas City, Missouri. The suit alleged that Dr. Villard and Clifford Eldridge were partners doing business variously as Villard-Eldridge Developers, Villard-Eldridge Fountainhead Partnership, Villard-Eldridge and Associates, and simply, Villard-Eldridge. The suit further alleged that Villard and Eldridge entered into contracts with The Ramos Group for architectural services relating to a number of real estate development projects across the State of Louisiana. Attached to the petition and made a part thereof were written and signed contracts on a form supplied by the American Institute of Architecture,[1] numerous invoices and other documents. The address of the Villard-Eldridge partnerships shown on the contracts and most of the other exhibits attached to the Missouri petition was 3916 Parliament Drive, Alexandria, Louisiana, which is the same address as Dr. Villard’s medical practice in that city. The suit was for a money judgment based on contract services rendered that were unpaid.
The Missouri judgment indicates that a settlement had been made between the plaintiff and Clifford Eldridge. The judgment was-only against Dr. Joseph Villard.
THE LOUISIANA PROCEEDINGS
Only two witnesses testified at the brief trial. They were Dr. Villard and his former secretary, Martha Smith Cebrynski.
Dr. Villard denied ever having received any notice of the suit or notice of entry of a default judgment. He denied ever having anything to do with The Ramos Group, Inc. He denied having ever received any architectural services from them. He admitted that he knew a Cliff Eldridge, but denied ever having any business dealings with him. He denied ever signing a contract with The Ramos Group, Inc., and when shown a purported copy of a contract bearing his signature, denied that that was his signature. When confronted with several purported financial statements of his dated in 1978, he denied the signatures thereon and declared that they were forgeries of his name. He denied knowing anything about the Villard-Eldridge Fountainhead Partnership; he was shown a contract involving that partnership and a signature that purported to be his, and he denied that it was his. He could not explain why Villard-Eldridge Developers had the same business address as his in Alexandria. Shown a letter typed under the letterhead “Villard-Eldridge and Associates, 3916 Parliament Drive, Alexandria, Louisiana”, he denied ever having seen such a letterhead.
A return receipt for the notice of entry of default sent from Missouri was put in evidence. It showed that it was delivered on August 9,1979 to Dr. Villard at his office in Alexandria and it was signed by one Martha Smith. Not only did Dr. Villard deny *868 ever receiving this notice; he also emphatically and repeatedly denied that a Martha Smith had ever worked for him or that he had ever heard of the name, saying “I have no earthly idea who Martha Smith is”.
At this point in the trial the court granted a recess and Martha Smith was produced. She testified that she worked in Dr. Villard’s office as his secretary-receptionist from March, 1978 until May, 1981. Her name was Martha Smith until May 10,1980, when she married and became Martha Ce-brynski. She testified that she worked every day for three years arid that she was known by the doctor as Martha Smith. She identified her signature on the return receipt and stated that it was her practice to put this type of mail on the shelf of the half door that led into his office. She also declared that she was acquainted with Clifford Eldridge and that he worked with Dr. Villard in the section of the doctor’s office reserved for the latter’s real estate business. She also said that she had heard of The- Ramos Group and knew it to be an architect firm or something like that. She had received telephone calls from The Ramos Group to both Dr. Villard and Eldridge. She declared that Eldridge and Dr. Villard were working together on real estate developments in 1978 and 1979. Finally, she recognized letterhead stationery of Villard-Eldridge and Associates, stating that she had seen it around the office.
After this, Dr. Villard in brief further testimony admitted that he recognized the lady, that she had worked for him, and that he knew her as Martha. He stated he never knew her last name.' He was not asked any questions concerning her further testimony.
The trial court obviously did not believe that most of Dr. Villard’s denials were truthful. In its reasons for judgment the district court said:
“The evidence indicated that defendant, Dr. Joseph Villard, did have substantial dealings with plaintiff sufficient to give rise to a lawsuit. However, all of these dealings involved Louisiana building projects, and it appears that practically all of the negotiations and relationships between the plaintiff and defendant occurred in the State of Louisiana. Dr. Villard did sign one contract that would have apparently given the State of Missouri jurisdiction over the subject matter with respect to any suit arising out of that particular contract, and the evidence did establish to the Court’s satisfaction that Dr. Villard did receive at his office a certified letter in which was apparently enclosed a notice of entry of the default judgment. Other than this (and a statement contained in an affidavit by a Missouri attorney that he confirmed by telephone conversation with Dr. Villard the receipt of the aforementioned notice of default), there is no other indication that Dr. Villard was notified of or had any knowledge of the suit being filed in Missouri.”
Our review of the case in light of the trial court’s findings of fact and the above circumstances cause us to sum it up as follows: When plaintiff filed its suit in the Louisiana court and submitted an exemplified copy of the Missouri judgment, and rested, it had presented a case entitling it to judgment under full faith and credit principles. Thereafter, the only issue of the foreign proceeding with which the district court could properly concern itself was the question of the Missouri court’s jurisdiction over the parties or the subject matter involved within that action. Holden v. Holden, supra. The burden of proving that the Missouri court lacked jurisdiction was on Dr. Villard, and he was required to discharge that burden by clear and positive proof. In view of the serious questions of Dr. Villard’s credibility, obviously noted by the trial court and readily apparent in this record, we find that Dr. Villard’s mere denial of receiving notice of the original suit is not the clear and positive proof required of him in the circumstances. We also find no factual basis in the record for the court to have concluded that insufficient “minimum contacts” were established for Missouri to exercise jurisdiction. Since the defendant absolutely denied any knowledge of or con *869 nection with The Ramos Group, the question of whether or not the minimum contacts standard was sufficiently met for Missouri jurisdiction was not even an issue in the case, and no evidence was adduced touching on it. Therefore, the defendant failed to prove that the Missouri court lacked jurisdiction.
For these reasons we reverse the district court and render judgment in favor of plaintiff, The Ramos Group, Inc., and against defendant, Joseph Villard, recognizing the judgment of the circuit court of Jackson County, Missouri, Sixteenth Judicial District, in favor of The Ramos Group, Inc., and against Dr. Joseph Villard, dated May 21, 1981, in the amount of $67,350.04, and ordering that the said judgment be made the judgment of the Ninth Judicial District Court for the State of Louisiana and executory therein.
We note that the Missouri judgment does not provide for interest.
The judgment will bear interest at the legal rate from judicial demand in the Louisiana court until paid.
Defendant will pay all costs in the district court and on appeal.
REVERSED AND RENDERED.

. The contracts contained a “Consent to Service” clause reading:
“Owner consents that any action to enforce this agreement may be maintained in any court in Jackson County, Kansas City, Missouri, having jurisdiction over the amount in controversy. Owner hereby appoints any officer of Architect as agent for the purpose of accepting service of any process within the State of Missouri, subject only to the condition that the said officer promptly mail a copy of any such process, by registered mail, return receipt requested, to Owner at the address first above set forth.”