157 So.2d 476 (1963)
Mary Jane WALKER, Plaintiff and Appellant,
v.
Charles C. WALKER, Defendant and Appellee.
No. 903.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
Rehearing Denied November 26, 1963.
Writ Granted January 20, 1964.
*477 Simon & Trice, by J. Minos Simon, Lafayette, for plaintiff-appellant.
Pugh & Boudreaux, by Nicholls Pugh, Jr., Lafayette, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
The plaintiff, Mary Jane Walker, sued Charles C. Walker in Lafayette Parish, *478 Louisiana, for separation from bed and board. Defendant answered, setting up the defense that there had already been rendered between the parties, at defendant's domicile in the State of Arkansas, a final judgment of divorce which is entitled to full faith and credit from the courts of Louisiana. After trial on the merits, the lower court upheld the validity of the Arkansas judgment of divorce and dismissed Mrs. Walker's separation suit in Louisiana. The lower court likewise ruled on certain matters pertaining to alimony, child custody, injunction and attorneys' fees. From these rulings the plaintiff, Mary Jane Walker, has taken this appeal.
The primary question involved is whether the Arkansas divorce decree is entitled to full faith and credit in the State of Louisiana. A decision of this issue depends on whether the Arkansas court had jurisdiction. Since Mrs. Walker was given timely notice of the pendency of the Arkansas proceedings, the sole jurisdictional requirement at issue is whether Mr. Walker was domiciled in the State of Arkansas at the time of the proceedings there. See Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366; also the general discussion in 17A Am.Jur. 124-141. In the similar case of Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 our Supreme Court has held that the only question which the Louisiana court will consider with respect to the validity of the divorce decree of another state is the jurisdictional requirement of domicile. LSA-C.C. Art. 38 defines "domicile" as being the place which a person makes his "habitual residence". "Domicile", as used here, is also defined as the place where a person has established his actual residence, combined with the intention of making it his principal establishment or home. See Successions of Rhea, 227 La. 214, 78 So.2d 838; Broussard v. Domingue (3rd Cir. La.App.1962), 146 So.2d 445.
With these legal principles in mind, let us consider the facts of the instant case pertaining to the issue of whether the defendant, Charles C. Walker, was domiciled in the State of Arkansas. The record shows that the Walkers were married in Lafayette Parish, Louisiana in 1947. They lived in various places in South Louisiana and then moved to Shreveport, Louisiana in about 1952. The husband was employed as a traveling salesman for a wholesale grocery company and his territory included parts of east Texas, north Louisiana, south Arkansas and part of Mississippi. Shreveport was located near the center of this territory.
There is considerable conflict in the testimony as to the circumstances under which Mr. and Mrs. Walker separated in Shreveport during the early part of January, 1961, at which time she returned to Lafayette, Louisiana and he moved to an apartment in Texarkana, Arkansas. The husband contends the wife was insistent on moving back to Lafayette, where her parents resided and where she planned to open a beauty shop. It is likewise his contention that she moved to Lafayette against his wishes and without his consent.
On the other hand, it is the contention of the wife that she was content to remain in Shreveport or to go with her husband wherever he desired, but that he deceived her into thinking that if she and the children moved back to Lafayette with all of their household belongings, he would join her there later.
Regardless of whether or not the wife was deceived, the facts show that the couple had serious matrimonial difficulties for several years and that during the first week in January, 1961 she took the children and all of the household belongings and moved from the home which they owned in Shreveport to a house which she rented in Lafayette. At about the same time he moved to an apartment which he rented in Texarkana, Arkansas. The evidence also shows that Texarkana was recommended to Mr. Walker by his employer as a place to live in the center of his changed sales *479 territory; that he actually rented and occupied an apartment there; that he used and paid for the utility services; that he opened a bank account there; that during the week days he traveled throughout his territory but on the week-ends he returned to his apartment in Texarkana. There is no evidence that he had any other home or domestic establishment except the apartment in Arkansas. He was still living there at the time these proceedings were tried, almost a year after he moved.
We think the above evidence amply supports the finding of the trial judge that the defendant was domiciled in Arkansas at the time he obtained his divorce there. This was his actual residence, as well as the place which he intended to be his principal establishment or home. Therefore, under the authorities cited above, the Arkansas court had jurisdiction and its divorce decree is entitled to full faith and credit in Louisiana.
It is unnecessary for us to consider defendant's argument that we should follow the theory of the case of Miller v. Miller, 159 So. 112, in which the Supreme Court of the State of Mississippi departed from the general rule that the one attacking, rather than the one urging, the validity of a judgment of another state, has the burden of proof. In the present matter, regardless of who had the burden of proof, the evidence clearly shows Mr. Walker was domiciled in Arkansas.
The next issue on appeal concerns alimony. A brief review of the sequence of events is necessary to understand the problem involved. Mr. Walker filed his Arkansas divorce action in early June of 1961. Mrs. Walker then filed her Louisiana suit for separation from bed and board, child custody, alimony pendente lite, etc. on June 21, 1961. Although Mrs. Walker's original petition was served on an attorney appointed by the court to represent the defendant, who was alleged to be a resident of Louisiana but absent from the state, Mr. Walker later employed his own attorney and made a general appearance in these proceedings by filing an answer on September 14, 1961. This answer urged his Arkansas divorce, which he had obtained on August 3, 1961, as a bar to Mrs. Walker's suit for separation as well as to her rules for alimony pendente lite, etc. This general appearance by Mr. Walker constituted a waiver of all objections to the court's jurisdiction over Mr. Walker's person. LSA-C.C.P. Art. 7.
After various delays the rule for alimony pendente lite was heard in October of 1961 and the court rendered judgment awarding Mrs. Walker the sum of $200 per month for herself and the two minor children.
Plaintiff's suit for separation was then tried on the merits in December of 1961, following which the court, on September 18, 1962, rendered and signed a judgment recognizing Mr. Walker's Arkansas divorce and dismissing Mrs. Walker's Louisiana action for separation from bed and board. In this same judgment, signed on September 18, 1962, the court awarded Mrs. Walker alimony for support of the two minor children in the sum of $100 per month. No permanent alimony award was made for Mrs. Walker.
On September 20, 1962, the plaintiff filed a timely motion for a new trial as to the judgment rendered on September 18, 1962. On October 17, 1962 Mrs. Walker filed a rule to show cause why the defendant should not be held in contempt for failure to continue to comply with the judgment for alimony pendente lite in the sum of $200 per month. She alleged that after the court rendered its judgment of September 18, 1962, Mr. Walker reduced his alimony payments to $100 per month. On November 26, 1962 Mrs. Walker also filed a petition for executory judgment for the amount of delinquent alimony. In both of these rules she contended that her motion for a new trial had suspended the judgment "reducing the alimony from $200 to $100." The rule for contempt and the petition *480 for judgment for delinquent alimony were served on the defendant through his attorneys of record, rather than on defendant personally.
To the rule for contempt and petition for delinquent alimony, defendant's counsel of record filed exceptions to the jurisdiction of the court over defendant's person on the grounds that the court had found in the trial on the merits that defendant is a nonresident of the State of Louisiana on whom personal service is necessary to secure personal judgment. On January 14, 1963, the lower court denied Mr. Walker's motion for a new trial and on the same date sustained defendant's exceptions to the jurisdiction in the contempt motion and petition for delinquent alimony.
The first issue which we must face is whether Mrs. Walker's timely application for a new trial had the effect of suspending the judgment on the merits which terminated alimony pendente lite of $200 per month for the wife and children, and awarded $100 per month for the children alone. Before the adoption of our new Code of Civil Procedure, on January 1, 1961, LSA-R.S. 13:4214 expressly provided that "[a]n application for a new trial or a rehearing filed timely as required * * * shall suspend the running of the time in which judgments become executory or within which appeals may be taken until the application has been denied." However, LSA-R.S. 13:4214 was repealed when our new Code of Civil Procedure was adopted. According to Concordance Table 3, found in LSA-C.C.P. Vol. 1 at page 766, the former LSA-R.S. 13:4214 is replaced by LSA-C.C.P. Articles 2087, 2123 and 2252. It is the contention of defendant that since the three cited replacement articles do not expressly provide that a timely application for a new trial suspends the execution of a judgment until the application is ruled upon, and since LSA-C.C.P. Article 3943 provides that a judgment awarding alimony cannot be suspensively appealed, it must be implied that an application for a new trial does not suspend an alimony judgment. We think the answer to this argument by defendant is that the judgment which plaintiff sought to change, by her application for a new trial, was not a judgment "awarding" alimony, but on the contrary was a judgment which terminated alimony pendente lite for the wife. See White v. Morris, 236 La. 767, 109 So.2d 87 holding that alimony pendente lite is automatically terminated by a final divorce decree. Although it is clear under LSA-C.C.P. Article 3943 that a judgment "awarding" alimony cannot be suspensively appealed so as to deprive the wife of necessary support pending appeal, we find no provision of the Code of Civil Procedure stating that judgment which terminates the payment of alimony cannot be suspensively appealed by the wife.
Thus, in the instant case, the judgment of September 18, 1962, terminating the wife's alimony pendente lite, did not become effective until after the delay for taking a suspensive appeal therefrom had elapsed. LSA-C.C.P. Article 2252. Within this delay of fifteen days, the wife applied for a new trial, which, under the provisions of LSA-C.C.P. Article 2123, further suspended the judgment until the application for a new trial was refused. After the court refused the new trial, the wife filed a timely suspensive appeal. Therefore, the effect of the judgment, terminating her alimony pendente lite, was suspended during the pendency of the motion for new trial, as well as during the pendency of this appeal.
The defendant husband's next contention is that the contempt citation and petition for executory judgment for delinquent alimony pendente lite must be disallowed for lack of personal jurisdiction over the defendant. As stated above, both rules were served on defendant's attorneys of record rather than on defendant personally. Defendant's basic premise for this argument is that when the judgment on the merits was rendered on September 18, 1962, recognizing the Arkansas divorce, the previously rendered judgment for alimony pendente *481 lite was terminated (under the holding in White v. Morris, 236 La. 767, 109 So.2d 87). Defendant contends that the judgment on the merits finally determined all matters pertaining to separation, alimony, injunction, etc. and that hence the subsequent contempt citation and petition for delinquent alimony constituted separate new actions for personal judgments which were required to be personally served on this nonresident defendant. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.
This argument has no merit. The suit for separation from bed and board was not ended by the trial court's judgment on the merits because a motion for a new trial and a suspensive appeal were taken from that judgment. The issue concerning the validity of the Arkansas divorce and the wife's Louisiana suit for separation are actually still pending on appeal. See LSA-C.C.P. Articles 2123 and 3942. Thus the suit for separation from bed and board was still pending at the time the contempt citation and petition for judgment for delinquent alimony were filed. These pleadings were properly served on defendant's attorney of record under LSA-C.C.P. Article 1314.
Defendant husband argues further that both the rule for contempt and the rule for judgment for delinquent alimony are summary proceedings which, under the provisions of LSA-C.C.P. Art. 2594, must be served upon the "defendant." He argues the word "defendant", as used here, means defendant personally. We think that these summary proceedings, used for the trial or disposition of incidental questions arising during the course of the litigation (see LSA-C.C.P. Art. 2592) may be served upon the adverse party by personal service on his counsel of record under the express provisions of LSA-C.C.P. Art. 1314.
We likewise find no merit in defendant's contention that the rule for contempt was required to be personally served on the defendant under the provisions of LSA-C.C.P. Art. 225. This codal article provides that a person charged with committing a constructive contempt (the defendant's alleged disobedience of the court's order to pay alimony pendente lite was clearly a constructive contempt under LSA-C.C.P. Art. 224) shall be served "* * * upon the person charged with contempt in the same manner as a subpoena * * *." LSA-C.C.P. Art. 1355, concerning service of subpoenas, provides that a party to the litigation may be subpoenaed "by personal service on the witness' attorney of record." These provisions of the code seem to clearly state that in the case of constructive contempt, service of the motion or rule to show cause may be made on a party's counsel of record.
The next issue concerns the lower court's refusal to award permanent alimony to the wife. As stated above, the district court's judgment on the merits ordered the defendant to pay to the plaintiff the sum of $100 per month for the support of the minor children but no permanent alimony was allowed for the wife.
The separation is sought by the wife on the grounds of the husband's alleged cruel treatment and abandonment. Aside from relying upon the Arkansas divorce decree as a bar to this separation suit, the husband also defends on the ground that the wife was herself guilty of cruel treatment and that she herself was the one who abandoned the husband. Without detailing the evidence, we will simply say that the rather sparse record indicates the present to be a situation where the faults of the husband and wife are rather evenly balanced, so that the separation is regarded as caused by the fault of both. See Miguez v. Miguez, La.App. 3 Cir., 128 So.2d 799. Therefore, even if we consider that the wife is entitled under LSA-Civil Code, Article 160 to alimony following the divorce, she has not proved that she is without fault substantially causing the separation so as to be entitled to alimony. Vinot v. Vinot, 239 La. 587, 119 So.2d 474.
*482 Because of this holding on the merits, we do not reach or pass upon the contentions of the parties concerning whether the Arkansas decree of divorce is or is not entitled to full faith and credit in Louisiana insofar as the Louisiana wife's alimony rights or fault are concerned, in a situation such as the present, where the Louisiana marriage has been dissolved by a foreign court without personal jurisdiction over or appearance by the defendant wife. 27B C.J.S. Divorce § 374, p. 866; Annotation, "Valid foreign divorce granted upon constructive service as precluding action by spouse for alimony, support, or maintenance", 28 A. L.R.2d 1378. See also Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed. 2d 1456 (1957). Nor do we reach consideration of the question whether, under the literal terms of LSA-Civil Code, Article 160, the wife can be awarded alimony for herself in Louisiana, following dissolution of the marriage by an Arkansas court which had granted the divorce at the instance of the husband as plaintiff.
Summarizing the issue of alimony, it is our conclusion that the plaintiff is entitled to alimony pendente lite, under the provisions of LSA-C.C. Article 148, in the sum of $200 per month for the support of herself and the minor children until the judgment rendered on this appeal, sustaining the Arkansas divorce, becomes final and executory. The wife is not entitled to any permanent alimony for herself after final judgment on this appeal. Of course, the alimony award of $100 per month for the support of the minor children is based on the father's obligation to support them and is not controlled by either LSA-C.C. Article 148 or Article 160. Actually, the defendant father has not answered the appeal and does not contest the award of $100 per month alimony for support of the minor children.
One of the plaintiff wife's specifications of error on appeal is that the district judge erred in his judgment on the merits of September 18, 1962 in "refusing either to order a partition of the community assets or to grant a permanent injunction to prevent the husband from disposing of same." The record shows that in her original petition for separation from bed and board the wife alleged the existence of community property and prayed for a preliminary and permanent injunction against the husband prohibiting him from disposing of the community estate during the pendency of these proceedings. A preliminary injunction was issued. Of course, when the lower court rendered judgment on the merits dismissing the wife's suit for separation on the grounds that the parties had already been divorced in the State of Arkansas, the district judge, consistent with such a holding, did not grant a permanent injunction to prevent the husband from disposing of the community estate. The wife is entitled to such injunctive relief under LSA-C.C.P. Articles 149 and 151 only during the pendency of a suit for separation or divorce. The lower court judgment on the merits held in effect that the parties had already been divorced in the State of Arkansas and hence no separation or divorce proceedings were still pending in Louisiana. However, as set forth above, the effect of the trial court's judgment on the merits was suspended by the motion for new trial and subsequent suspensive appeal. Thus the suit for separation is still pending on appeal and the preliminary injunction has remained in effect during the pendency of this appeal.
However, as set forth above, we have reached the conclusion that the trial judge was correct in upholding the validity of the Arkansas divorce decree and dismissing the wife's Louisiana suit for separation from bed and board. Hence, the wife is entitled to no further injunctive relief under LSA-C.C. Articles 149 and 150 because no separation or divorce suit is still pending. The parties now own the community estate in indivision and may proceed to partition, settle or dispose of it as they see fit.
*483 The short answer to the plaintiff wife's contention that the lower court erred in refusing to order a partition of the community estate is that she did not pray for any such relief.
Plaintiff's next contention is that the lower court erred in failing to award her attorney's fees in the sum of $1,000. In her petition for separation from bed and board the plaintiff alleges that she had engaged the services of an attorney and that a "reasonable attorney's fee of $1,000 should be awarded herein and charged as a debt of the community." She did not allege that she had paid counsel or obligated herself to pay any amount. Furthermore, during the trial no evidence was introduced to prove any contract of employment or to show the value of any such attorney's fees on a quantum meruit basis. Under these circumstances we think the applicable law is set forth in the case of Murphy v. Murphy, 229 La. 849, 87 So.2d 4 in which the court held as follows:
"We think, however, that there is merit in defendant's claim that the trial judge erred in awarding plaintiff the amount of $250 as attorney's fees. Although she alleged that she was entitled to attorney's fees and prayed for judgment against the defendant therefor, she did not allege that she had paid counsel or obligated herself to pay in any amount, nor did she introduce any evidence to show the value of said services. Under the circumstances, the judgment granting attorney's fees was unwarranted. Scacciaferro v. Hymel, 206 La. 973, 20 So.2d 284; Arnold v. Arnold, 186 La. 323, 172 So. 172."
We are not called on to express an opinion at this time as to whether plaintiff or her attorneys are entitled to attorneys' fees if such are sought at a later time in separate proceedings.
For the reasons assigned, the judgment rendered and signed in the lower court on the 18th day of September, 1962, dismissing the plaintiff wife's suit for separation from bed and board and awarding her alimony for the support of the minor children in the sum of $100 per month, in addition to certain medical expenses, is affirmed. The judgment in the district court of date, January 14, 1963 sustaining the defendant husband's exceptions to the rule for contempt and petition for executory judgment for delinquent alimony pendente lite is reversed and set aside and this case is remanded to the lower court for further proceedings in connection with said rule for contempt and petition for executory judg-in accordance with the views expressed ment for delinquent alimony pendente lite, herein. All costs in the lower court, as well as the costs of this appeal, are assessed against the plaintiff and the defendant in the proportion of one-half to each. The assessment of future costs to be determined in accordance with law.
Affirmed in part, reversed in part and remanded.

On Application for Rehearing
En Banc. Rehearing denied.
TATE, Judge (concurring in denial of rehearing).
The writer is in accord with all conclusions reached by the majority in the decision of this question, except insofar as the majority's opinion is interpreted as holding that the wife is entitled to alimony pendente lite until such time as the present Louisiana judgment is final, thus recognizing in Louisiana the validity of the Arkansas divorce decree only as of the date of finality of this Louisiana judgment.
In denying the rehearing, the majority definitely intended to hold that the wife was entitled as a matter of law to alimony pendente lite until such time as the Louisiana courts recognize the validity of the Arkansas divorce. While there is considerable merit to this view, there is likewise considerable merit to the view that the husband must pay alimony pendente lite as ordered by a Louisiana court, but that he has the right to recover it orultimatelyto be held not liable for it, if the Louisiana court *484 eventually decides he is not as a matter of law liable for such alimony.
(In my opinion, the same rule, for instance, should apply when the husband's appeal questions the amount of alimony pendente litealthough he no longer has the right to appeal suspensively, LSA-C.C.P. Art. 3943, nevertheless his right to a devolutive appeal should entitle him to recovery or offset for the excess amounts paid during the interim, if on review the appellate courts rule in accordance with his contention that the amount fixed by the trial court was excessive. I do not think the authors of the Code of Civil Procedure intended to take away his right of appeal for alimony awards; they just intended to take away his right of suspensive appeal, so that his wife and/or children should not starve during the appellate delays.)
The writer signed the original opinion of this court in the belief that its holding was only that the husband was under the obligation to pay alimony pendente lite during the appellate delays. The writer did not think the ultimate liability for such alimony of the husband to the wife was before us on this appeal. I am still of this opinion, and so concur in the denial of rehearing, but for a different reason than that of the majority, as will be set forth more fully below.
The defendant-appellee suggests that, since we have affirmed the validity of the Arkansas divorce terminating the marriage as of August 3, 1961, then the husband has no obligation to pay alimony pendente lite beyond said date, since such obligation "arises from the duty of the husband to support the wife during the marriage." Lazarus, What Price Alimony?, 11 La.L. Rev. 401, 416 (1951) citing several cases to such effect. Therefore, after the divorce, the wife may collect only unpaid alimony pendente lite due prior to the divorce. See Note 14 Tul.L.Rev. 139 (1939). See also Shapiro v. Shapiro, 242 La. 903, 139 So.2d 762, 763.
In the present proceedings, the husband was ordered to pay alimony pendente lite by the trial court judgment of October, 1961. He did not appeal from this award and voluntarily paid amounts due under it up until September of 1962, when the trial court disallowed any further alimony for support of the wife. As to such amounts voluntarily paid without appealing the order to pay alimony pendente lite, I suppose there is no further question as to the husband's liability therefor.
However, the husband refused to continue to pay alimony in this amount following the trial court judgment of September, 1962, and reduced his alimony payments to the $100.00 allowed by such September, 1962 judgment for support of the two children only.
The narrow question with which we are concerned in this case is the failure of the husband to continue to pay the additional $100.00 per month alimony pendente lite for the wife, after the not-final trial court judgment on the merits had reduced the total amount due by him from $200.00 to $100.00 per month.
In my opinion, our original opinion and decree did not necessarily hold that the husband will be held liable ultimately for such unpaid alimony pendente lite. The sole effect of our ruling, I thought, was to hold that the husband's obligation to pay alimony pendente lite, per judgment of the trial court, was not suspended by the trial court judgment on the merits of the separation suit and the appeal therefrom. (As noted, however, at our conference on rehearing, the majority's interpretation, to the contrary, is that we have definitely held that the husband is as a matter of law obligated to pay alimony pendente lite until such time as the Louisiana courts recognized the Arkansas divorce.)
If, for instance, the husband had continued to pay such alimony pendente lite during the appeal until the final termination of this separation proceeding, then under the present factsi. e., that the final judgment disposing of the separation suit also had the effect of finally recognizing in Louisiana the *485 Arkansas divorce decree of August 1961 as valid and binding, then possibly the husband might have had a cause of action to recover such alimony pendente lite payments previously paid in obedience to the order of court, under LSA-Civil Code, Article 2301: "He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." (Compare, however, the statement of the law at 27A C.J.S. Divorce § 215, p. 933: "A husband's payment of alimony pendente lite may not be recovered back from, or set off against, his wife despite the invalidity, vacation, or modification of the order.")
In the present instance, however, the husband did not continue to pay the alimony pendente lite, even though the judgment ordering him to do so was not suspended by the wife's appeal from the judgment dismissing her separation suit on the merits. He should be in no better position now because of his failure to do so.
Nevertheless, it would seem that the husband has the right to raise any defense he might have against his ultimate obligation for alimony (such as the defense presently urged), at the trial of the rule to determine and make executory the past due alimony pendente lite, following which the court renders judgment "for the amount of past due alimony." LSA-C.C.P. Art. 3945. Cf., Snyder v. Snyder, La.App. 4 Cir., 152 So.2d 246, certiorari denied.
As stated at 27B C.J.S. Divorce § 276e, p. 189: "In determining the arrearages under an alimony award, the proper procedure, it has been stated, requires the computation of the entire amount the husband was required to pay and then a determination of the credits which a court of equity should allow to him."
The following general considerations should be pertinent to the disposition of the question concerning the husband's liability for alimony pendente lite under the interlocutory judgment of September 1961, as existing following the trial court judgment on the merits of September 1962:
(1) A husband should have no legal excuse to suspend the payment of alimony pendente lite ordered by a court, simply because he feels he might on appeal be successful in obtaining an appellate holding that he is not liable for this alimony.
(2) The husband's eventual right, if he is successful on appeal, to recover alimony pendente lite payments so made, should not be prejudiced, at least when the husband has actively protested the wife's right to them by taking an appeal as to his liability therefor, or when the effect of the trial court's later actions which are appealed is to put the wife's right to receive such payments at issue for appellate review.
(3) When the husband has voluntarily without appealing same paid alimony pendente lite ordered, he should not be entitled to secure the return of the money which he has paid to his wife. Without an appeal or trial court order modifying the alimony award, the wife is not put upon notice that her right to receive these sums is questioned.
(4) The husband who refuses to pay alimony pendente lite ordered by a trial court judgment, should not be placed in a better position with regard to his ultimate liability for it, than he would occupy had he complied with the court order and paid the alimony pendente lite.
In summary, our holding herein should not foreclose any right the husband may have to defend against the claim against him for past due alimony pendente lite, if the law allows him to raise such defense. To repeat, the sole effect of our ruling should be to hold that the trial court judgment ordering him to pay alimony pendente lite was not suspended by the wife's appeal from the dismissal on the merits of her separation suit.
Subject to these qualifications, I respectfully concur in the majority's denial of the defendant-husband's application for rehearing herein.