HALL Judge.
Morris J. Estrade filed this suit for divorce against his wife, Alcidene Chandler, on August 24, 1967 alleging as grounds therefor their continuous living separate and apart for a period in excess of two years. In her answer Mrs. Estrade admitted plaintiff’s allegations and reconvened on the same ground for a judgment of divorce in her favor. She further alleged that she was without fault and was in necessitous circumstances and prayed for ali- *763 money under the provisions of LSA-C.C. Art. 160, as amended. She also prayed for costs including attorney’s fees.
Following trial on the merits the Trial Judge rendered a judgment of divorce in the wife’s favor on her reconventional demand; decreed that she was without fault and condemned Mr. Estrade to pay alimony for her maintenance and support in the sum of $45.00 per week and to pay the fee of her attorney which he fixed at the sum of $300.00. The plaintiff husband appealed. The wife answered the appeal praying that the award of attorney’s fees be increased to the sum of $500.00.
The divorce itself is not in .contest except that plaintiff contends it should have been rendered in his favor.
The principal issue presented is whether the wife is entitled to an award of alimony. The record reveals that she has no means for her support and the issue resolves itself into whether she was free from fault within the meaning of LSA-C. C. Art. 160, as amended by Act No. 48 of 1964.
Plaintiff contends that the proximate or at least a contributing cause of the separation and continuous living apart (see Felger v. Doty, 217 La. 365, 46 So.2d 300) was habitual intemperance on the part of his wife. Mrs. Estrade, on the other hand, contends that the cause of the separation was her husband’s interest in other women.
The record reveals that the parties became acquainted in Providence, Rhode Island, while Mr. Estrade was in the service and Mrs. Estrade was employed as a barmaid. The marriage took place in New Orleans on February 20, 1946. One child Ruth, was born of the marriage. Ruth is now a major and is married. Mrs. Estrade had a daughter by a former marriage who is also of age and married. The matrimonial domicile has always been in the City of New Orleans. The separation between plaintiff and his wife took place on June 15, 1965.
The record reveals that Mr. and Mrs. Estrade commenced to drink together when they first met and that they continued to do so throughout their married life.
After their marriage Mr. and Mrs. Es-trade became very active in American Legion circles. He was a member and Past Commander of a Legion Post in New Orleans while she belonged to the Ladies Auxiliary of the same Post. The Post owned a hall where its meetings and social functions were held. Mr. and Mrs. Es-trade habitually attended these social functions where they drank together. Insofar as the record shows they confined their drinking to beer but both became intoxicated on occasion. Mrs. Estrade also habitually attended the meetings and social functions of the Ladies Auxiliary and indulged in beer drinking on those occasions.
Mr. Estrade was rarely home in the evenings except on week ends. After dinner he would leave his wife alone at home and spend his evenings at the Legion Hall where he acted as a steward whenever the Post rented the hall for weddings, dances, or other social gatherings. On these occasions he received $5.00 for his services. On other occasions he spent the evenings playing pool at the Legion Hall or working overtime for the United Fruit Company where he was regularly employed.
His wife was left alone at home four or five nights a week. She spent her evenings watching television and drinking beer. When her husband came home around 11:00 P.M. he frequently found her asleep in her chair and on occasion had to undress her and put her to bed. Mrs. Es-trade testified that she also had to put her husband to bed on occasion.
The record shows that Mr. Estrade stayed at home on week ends and that on Friday he would purchase two cases of beer which they would consume by Monday.
There is no doubt that Mrs. Estrade was guilty of habitual intemperance. Accord *764 ing to the testimony at least some of her drinking was due to loneliness by reason of being left alone at night. There is also no doubt that her husband himself drank and that when they were together they drank together and had done so throughout the marriage.
On the other hand the record shows that Mrs. Estrade kept a neat, clean home and that she was an excellent cook; that she cooked her husband’s dinner every day, kept his clothes in order and in general was a good housewife.
Mr. Estrade told his wife several times before the separation that he was going to leave her if she didn’t stop drinking. He also made the same remark to her daughters. The daughters however testified that he likewise told them he had become interested in another woman.
Mrs. Estrade testified that she frequently telephoned the Legion Hall where her husband was supposed to have gone only to be told that he was not there. She suspected he was “running around” with other women.
Mrs. Estrade testified that her husband did not complain about her drinking until she “found out” he was running around with other women; then he tried to find excuses for it. She testified that she didn’t drink any more than he did and that they did not drink any more after their marriage than they did before. She also testified that he told her he was interested in another woman.
On Wednesday, June 9, 1965 Mr. Es-trade informed his wife he had been invited to attend a weekend party at Mobile given by some of the employees of the United Fruit Company and asked her to pack his grip. He informed her that the wives were not invited. Mrs. Estrade became suspicious after he left and on Saturday, June 12, 1965 she and her daughter, Ruth, drove to a camp at Waveland, Mississippi, belonging to a Mrs. Doris Miller where they found Mr. Estrade’s automobile parked in front. After waiting a few minutes by the car Mr. Estrade and Mrs. Doris Miller came in from swimming accompanied by another couple and some children. After a short conversation with her husband Mrs. Estrade and her daughter returned to New Orleans.
Three days later Mr. Estrade left the matrimonial domicile and did not return. He testified that he had had intercourse with his wife “the last few days before I left.”
Mrs. Doris Miller testified that she had known both Mr. and Mrs. Estrade for about three years; that they had attended parties together at the Legion Hall; that she had never gone out socially with Mr. Estrade alone until after the separation although she knew she had been accused of it; that he occasionally asked her to order goods for the Legion Post and came to her place of employment to pick them up and he would drive her home. She further testified that she had not invited him to her camp at Waveland on June 12, 1965 but that he came uninvited; that there were seventeen invited guests at her camp on that day. She testified that after the parties separated she went out socially with Mr. Estrade; that they had spoken of marriage and that he had given her a ring at Christmas.
The Supreme Court held in Felger v. Doty, 217 La. 365, 46 So.2d 300 that the word “fault” as used in LSA-C.C. Art. 160 contemplates conduct or substantial acts of commission or omission on the part of the wife “which constitute a contributing or a proximate cause of the separation and continuous living apart * *
Considering the fact that Mr. and Mrs. Estrade drank together before their marriage; that they continued to drink together throughout the entire nineteen years of their married life; that Mr. Estrade presumably furnished the beer which his wife consumed when she was left alone at night; that his wife drank no more toward the end of the marriage than she always had; that they cohabited up to a few days *765 before the separation and that Mr. Estrade besides complaining of her drinking told both his wife and his daughters that he had become interested in another woman, we are of the opinion that Mrs. Estrade’s drinking was neither the proximate cause of the separation nor a cause which proximately contributed thereto, and that she was without fault in the separation.
Plaintiff contends that the Trial Court erred in condemning him to pay the wife’s attorney’s fees. Defendant on the other hand contends that the attorney’s fees awarded should be increased from $300.00 to $500.00. The fee of the wife’s attorney in a suit for separation from bed and board or divorce is a debt of the community and not a personal obligation of the husband. (See Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794). In the instant case there is no showing that the parties owned any community property. Moreover the defendant wife did not allege that she had either paid her attorney or that she had obligated herself to pay his fee in any amount nor did she introduce any evidence to show the válue of his services. Under such circumstances it has been held that an award of attorney’s fees is unwarranted. See Randle v. Randle, La.App., 144 So.2d 461; Walker v. Walker, La.App. 157 So.2d 476 (reversed in part on other grounds, 246 La. 407, 165 So.2d 5); Murphy v. Murphy, 229 La. 849, 87 So.2d 4; Scacciaferro v. Hymel, 206 La. 973, 20 So.2d 284.
For some reason, not disclosed, the Trial Judge granted the divorce in favor of the wife on her reconventional demand without having disposed of the husband’s main demand for a divorce in his favor. Since the main demand o'f the husband and the reconventional demand of the wife were both based on the ground of living separate and apart for two years, we do not think it makes any practical difference in whose favor the divorce was rendered. However a proper disposition of the case calls for the rendition of the divorce in favor of the plaintiff husband.
The alimony awarded the wife by the Trial Judge is uncontested as to quantum.
For the foregoing reasons the judgment appealed from is amended by rendering the divorce in the plaintiff husband’s favor and setting aside and deleting the award of attorney’s fees. As so amended and in all other respects the judgment appealed from is affirmed; all costs of both courts to be borne by plaintiff-appellant.
Amended and affirmed.